NORTHERN PACIFIC RAILROAD COMPANY *v.* ST. PAUL, MIN-
NEAPOLIS & MANITOBA RAILWAY COMPANY and others.

*(Circuit Court, D. Minnesota.   December, 1880.)*

1. INJUNCTION—BOND OF INDEMNITY.—Courts of equity will sometimes
   substitute a bond of indemnity for an injunction, if the ends of jus-
   tice will thereby be promoted, and especially if any public interest
   may suffer by continuing the injunction in force pending the litiga-
   tion.

2. SAME—SAME.—It is within the ordinary powers of a court of chancery
   to accept such a bond when proceeding according to the general
   principles of equity.

3. FEDERAL COURTS—EQUITY.—Such general principles are administered
   by the federal courts of equity in all cases, and in every state, irre-
   spective of local laws and state practice.

4. INJUNCTION—BOND OF INDEMNITY.—*Held*, therefore, in this case,
   where a prompt assessment of damages could not, in all probability,
   be had, and where the right of the complainant to any damage was a
   matter of dispute, depending for its solution upon doubtful questions
   of law and fact, that a court of chancery might, instead of stopping the
   progress of a great work of internal improvement, of general and
   public as well as of private importance, require a bond to be given,
   and allow the construction to go on.

Motion to Dissolve Injunction.

*Gilman & Clough,* for complainant.

*R. B. Galusha* and *Bigelow, Flandrau & Clark,* for respond-
ents.

McCRARY, C. J.   The complainant owns and has for years
operated a line of railroad running across the state of Min-
nesota, constructed by virtue of authority conferred by cer-
tain acts of congress in this bill mentioned.   The respondents
are the owners of another line of railroad, now in process of
construction under authority conferred by the state of Min-
nesota, as alleged in the answer.   Each of these companies
has power to acquire, by purchase or condemnation, the
land required for right of way, depot, grounds, etc.   The
lines of the two railroads cross each other at a point near
Fargo, in the state, the exact point of crossing being on the
N. W. ¼ of section 9, township 139, range 8, in the county

of Clay, Minnesota. In 1872 the plaintiff company entered upon this land and took, without condemnation, so much of the same as is now occupied by it for right of way, and has ever since operated its railroad across the same.

At the time of the passage of the act of congress incorporating the complainant company, the land in question was public land; but at the time of the definite location of the line of the road under that act said land was owned by one J. S. Schreiber, who in the meantime had obtained a patent therefor, and from whom, through several mesne conveyances, the title passed to the respondents. No proceedings under the statute of Minnesota to recover damages for the right of way were ever instituted by said Schreiber, or any of his grantees, against the complainant. The respondents claim, under these circumstances, that they are the owners of the land and have the right to construct their railroad across it, and in doing so to cross the track of complainant, without making compensation. The complainant claims that it has a vested right and a valuable property in its right of way, which cannot be taken by the respondents without condemnation, under the statute, and payment of damages. Numerous questions arising upon the admitted facts have been discussed by counsel, the more important of which are the following: *First.* Whether, under the charter of the complainant company, (act of congress of July 2, 1864,) that company acquired the right of way over all lands that were public at the time of its passage, or only over such as were public at the time of the location of the line. *Second.* Whether the respondents, or those under whom they claim, had a complete title to the *locus in quo* at the time the complainant entered upon the same; and, *third,* if so, whether by permitting the complainant to take the right of way, and use the same for eight years, the respondents and their grantors lost their rights therein, and the complainant acquired a vested right. *Fourth.* Whether the respondents' right to claim so much of the land as is embraced within complainant's right of way is barred by section 7 of the aforesaid act of congress.

Besides these questions, which arise upon the admitted

facts, there is another which depends for its decision upon facts which are controverted. It is alleged in the answer that the plaintiff well knew that the enterprise in which respondents had embarked "involved the crossing of plaintiff's road at or near the point of crossing aforesaid, and that the place and manner of said crossing, as aforesaid, were fully explained to the plaintiff, and that the plaintiff expressly assented to and approved the 'place and manner of crossing as aforesaid, and represented to the defendants, and gave them to understand, that they could and should be permitted to build and operate the said Barnesville & Moorhead Railroad across the said plaintiff's road at the place aforesaid whenever and as soon as they desired so to do, and that they would assist in effecting such crossing, and that no obstacle would be interposed thereto; and that after such representations and license, and in firm reliance upon the same, and without and before any notice or knowledge that the said representations would not be carried out in good faith, or of any design on the part of the plaintiff to interpose any obstacles whatever to such crossing, or to attempt so to do, the said defendant companies went on and expended large sums of money in the construction of said road, to-wit, several hundred thousand dollars," etc. These allegations are denied by certain affidavits filed by complainant; but it is manifest that the question of fact thus presented cannot be finally decided until the final hearing upon the testimony. The right of the complainant to damages for the crossing of its track on the land above described, by the respondents' railroad, depends upon the docision of these several questions, some of which are by no means free from difficulty, and one of which (the last named) cannot be finally determined until the final hearing. In such a case the usual course is to continue the injunction in force, and thus keep the parties in *statu quo* until the final hearing. But this rule has its exceptions. Courts of equity will sometimes substitute a bond of indemnity for an injunction, if the ends of justice will thereby be promoted, and especially if any public interest may suffer by continuing the injunction in force pending the litigation. There are several cogent rea-

sons which should impel us to adopt this latter course in the present case, if, upon examination, it is found to be within our discretion to do so.

1. Whatever doubts we may have upon other questions, we have none as to the absolute right of the respondents to build their railroad along the line specified in their charter, and to cross the line of the complainant at the point in controversy, upon paying the damages, if it be finally decided that complainant is entitled to damages, and without such payment, if, upon final hearing, it shall be so determined. The most that the complainant is entitled to is its damages; and if that be amply secured its rights are protected.

2. The case is peculiar in this: that the controversy is not as to the amount of damages, but as to the right of complainant to any damages. It is not a controversy that can be settled in a few days by the appointment of a board of commissioners to assess the damages of complainant. As already suggested, the right of complainant to damages may depend upon a disputed question of fact, which cannot be determined until proofs are taken in the regular course of proceedings. Enough has already appeared in the case to satisfy us that a somewhat protracted litigation may precede the determination of the question of damages. Already the proceedings instituted in the state court for the purpose of having the complainant's damages assessed have been interrupted and delayed by removal thereof into this court, where they are now pending. We will not anticipate, much less decide, any of the questions that may arise here in that proceeding. It is enough for the present to say that the controversy which must precede an assessment and payment of damages in this case may be protracted

3. The public is interested in the construction of new lines of railway, which are indeed only improved highways. The policy of the law is to encourage and facilitate such construction. The statute of Minnesota provides for railroad crossings upon the theory that the public interest requires that these highways of commerce and travel should run in different directions over the state, and that no one line shall

erect a barrier not to be passed by others. It is manifest from these considerations, and others that might be named, that the respondent companies ought to be permitted to complete their line across that of the complainant at the earliest moment compatible with the full and complete protection of the rights of the latter. That these rights car be fully and completely protected by requiring the respondents to give bond with approved security to pay the damages which may be awarded to complainant, is entirely clear.

But we are met with a question as to the power of this court in a case of this character to adopt this course. It is not necessary to cite authority to show that to accept such a bond is within the ordinary powers of a court of chancery when proceeding according to the general principles of equity. It is a mode of proceeding, not only authorized by the general principles of equity jurisprudence, but it is in common use in courts of chancery, and especially in federal courts. In patent cases, for example, where it is supposed that an injunction to restrain the use of a patented article may operate injuriously, the complainant is protected by a bond to account for profits and pay damages instead of an injunction. It is only necessary to add that the federal courts of equity administer the same general principles in all cases and in every state, irrespective of local laws and state practice. If the court has jurisdiction to try and determine a case in equity, it must determine it according to these general principles, which are the same in every state. *U. S.* v. *Howland,* 4 Wheat. 115; *Boyle* v. *Zacharie,* 6 Pet. 658; *Never* v. *Scott,* 13 How. 268; *Noonan* v. *Lee,* 2 Black, 499.

It is not necessary, in view of these authorities, to decide what the power of a state court might be in a case of this character; but we see nothing in the statute which in our judgment ought to be construed to forbid a court of chancery of the state to accept a bond under the circumstances disclosed by the record in this case. It may be suggested that a bond cannot be substituted for payment of the damages. After the damages are assessed, the amount ascertained, this may be so. But the question here is, whether, in a case

where a prompt assessment cannot in all probability be had, and where the right of the complainant to any damage is a matter of dispute, depending for its solution upon doubtful questions of law and fact, a court of chancery may, instead of stopping the progress of a great work of internal improvement, of general and public, as well as of private importance, require a bond to be given, and allow the construction to go on. The statute itself recognizes the propriety of substituting a bond for the actual payment of the damages, even after assessment, in case an appeal is prosecuted. See section 23, c. 34, St. Minn.

It is said to dissolve this injunction and accept a bond instead would in effect authorize the respondents to commit a trespass, if not a crime, by laying their track across that of complainant. After this court has decided that upon giving bond the respondents may extend their track across that of complainant, and after such bond shall have been given and approved, the right of the respondents to go on with the construction of their line and to cross that of the complainant will be no longer open to dispute or question. The case is before us; our jurisdiction of the parties and the subject-matter is complete.

The order will be that the injunction be dissolved upon the execution by the respondents to the complainant of a bond, with sureties to be approved by a judge of this court, in the sum of $5,000, conditioned that the respondents will pay all damages which may be awarded or adjudged in favor of complainant by reason of the construction of respondents' line of railway across that of complainant.

NOTE. See *Northern Pacific Railroad Co.* v. *St. Paul, Minneapolis & Manitoba Railway Co.* 3 FED. REP. 702, and *Northern Pacific Railroad Co.* v. *B. & M. R. Co., ante,* 298.