GURDON & FORT SMITH RAILROAD COMPANY *v.* VAUGHT.

Opinion delivered January 9, 1911.

1. RAILROADS—RIGHT-OF-WAY—ABANDONMENT.—While nonuser by a railroad company of a right-of-way does not alone constitute an abandonment, it is evidence of an abandonment; and when, in addition to such nonuser, facts are proved and circumstances shown evincing that intention, the abandonment is established. (Page 237.)

2. SAME—PROOF OF INTENT TO ABANDON RIGHT-OF-WAY.—The question whether a railroad company has abandoned a right-of-way acquired by it is one of intent, and such intent can be established by the acts of the company clearly indicating its purpose not to use such right-of-way and by long nonuser thereof. (Page 238.)

3. SAME—RIGHT-OF-WAY—ABANDONMENT.—Where a railroad company for 20 years failed to make use of a right-of-way granted to it for the purpose solely of constructing a railroad, and without consideration conveyed such right-of-way to another company, it will be held to have abandoned it. (Page 238.)

4. ESTOPPEL—DOES NOT ARISE WHEN.—Where a landowner conveyed to one railway company a right-of-way over his land, the fact that, in a contract with defendant railroad company, such grant was recognized did not estop the landowner from insisting that the first mentioned railroad company had abandoned such right-of-way if defendant did not in any way act to its injury in reliance upon such recognition. (Page 239.)

5. DAMAGES—MARKET VALUE.—The market value of property taken for a public use is to be determined from its availability for all valuable purposes. Thus, in an action to determine the value of property taken for a right-of-way of a railroad, it is competent to show its advantageous location for railroad purposes. (Page 240.)

6. SAME—EVIDENCE OF MARKET VALUE.—In an action against a railroad company to recover the value of land taken by it for its right-of-way, it is competent to prove the cost and expense of placing any other site in that section of the county in a condition as available for railroad purposes as the property which was taken. (Page 242.)

Appeal from Howard Circuit Court; *James S. Steel,* Judge; affirmed.

*W. E. Hemingway, E. B. Kinsworthy, W. V. Tompkins* and *James H.. Stevenson,* for appellant.

*James D. Head, J. S. Lake* and *Hill, Brizzolara & Fitzhugh,* for appellee.

FRAUENTHAL, J.    This was an action instituted by the plaintiffs below against the Gurdon & Fort Smith Railroad Company to recover damages for the appropriation by it of plaintiff's land for a right-of-way upon which it built its railroad. The plaintiffs alleged that they were the owners of eighty acres of land in Montgomery County through which ran a narrow pass in the mountains, known as Caddo Gap, which was especially valuable for railroad purposes. On either side of this gap, for a great distance to the east and west, were high and impassable mountain ranges so that it constituted substantially the only practicable route for a line of railroad through that section of the country. The defendant had entered and built its railroad on this land through this gap. The plaintiffs asked for $100,000 as a compensation for the land thus appropriated by the defendant; and recovered a judgment for $3,200.

The defendant claimed to be the owner of the right-of-way running through this gap by reason of conveyances thereof made by the plaintiffs and those through whom they claim title to the land; and on this appeal it also urges that, in event it shall be determined that plaintiffs are the owners of said land and the right-of-way, incompetent testimony was admitted upon the trial of the case in fixing the value of the land appropriated by it, which was so prejudicial to the rights of the defendant as to call for a reversal of the judgment.

In 1887 one B. F. Vaught purchased the land in controversy for himself and his brothers, the plaintiffs, W. M., J. R., A. P. and J. H. Vaught, but took the legal title in himself. He died in 1899 leaving surviving him his widow, the plaintiff, Rosie Vaught, and his children, who are the minor plaintiffs herein. Subsequently, by decree of the Montgomery Chancery Court, it was determined that said four brothers and the heirs of B. F. Vaught were each the owner of an undivided one-fifth interest in said land. The plaintiffs are therefore the owners of the land, and are entitled to compensation for the appropriation thereof by defendant, unless it has acquired it by grant from them,

because it has never condemned same for its use.   Kirby's Digest, § 2903.

1.   On December 15, 1887, B. F. Vaught executed to the St. Louis, Iron Mountain & Southern Railway Company an instrument by which, in consideration of one dollar and the benefits to accrue to him from the building of said company's railroad along this route, he conveyed a right-of-way 100 feet feet wide through this land to said company "to have and hold as long as used for the purpose of a railroad and no longer;" but the instrument did not provide that the right-of-way should also pass to said company's successor or assign.   On May 4, 1907, the St. Louis, Iron Mountain & Southern Railroad Company conveyed said right-of-way to the defendant, who now claims the rightful ownership thereof under that conveyance.

It is contended by the plaintiffs that the St. Louis, Iron Mountain & Southern Railway Company abandoned said right-of-way and thereby lost all rights thereto acquired by it by said deed from B. F. Vaught.   It appears from the undisputed testimony in the case that about the time it acquired this deed the St. Louis, Iron Mountain & Southern Railway Company surveyed a railroad from Gurdon to Fort Smith and filed a map of it, and that it was along this route that it was contemplated that this company should construct a railroad.   It was solely in consideration of the construction of a railroad along this route that this deed was executed to it by B. F. Vaught; but that company did nothing further at any time towards the construction of a railroad along this route or through the land.   It took no steps at any time to build a railroad along this route, and did no act of any kind by which it evinced an intention to build such a road. During all the time from the execution of said deed up and until 1907, the plaintiffs and B. F. Vaught were in the exclusive possession of this land except for a short time in 1903 and 1905, and at no time did said company enter on any of the land through which the right-of-way passed, nor by any act did it indicate that it still claimed this right-of-way and intended to build any road thereon.   On the contrary, in 1900 or 1901 this company agreed to give whatever interest it had in the right-of-way to defendant without any consideration.   This is the first time after it had acquired the deed in 1887 that this company ever gave its at-

tention to the right-of-way, and it was then willing to get rid of it as a gift.

The defendant was organized as a railroad corporation in 1899 or 1900 for the purpose of building a railroad along this route and on the right-of-way over plaintiff's land, and proceeded to make surveys and to file maps thereof, but the St. Louis, Iron Mountain & Southern Railway Company raised no objection to any action taken by it, and made no claim that it was the owner of this right-of-way. On May 4, 1907, it executed to defendant a quitclaim deed to the right-of-way for a nominal consideration. For almost 20 years the company failed to make any use of this right-of-way, and made no active claim thereto; and by its conduct during that time, its failure to assert any claim to the right-of-way when the plaintiffs and others were occupying it and asserting claim thereto adverse to its rights, and by its gratuitous disposition thereof, we think it clearly manifested an intention to abandon the right-of-way.

A railroad company may abandon a right-of-way acquired by it by grant and thereby lose all right thereto. Whether or not an abandonment exists in any given case depends upon the particular circumstances of such case. A right-of-way is but an easement, which will be held to be abondoned when the intention to abandon and the acts by which such intention is carried into effect clearly indicate such abandonment. While nonuser does not alone constitute an abandonment, yet it is some evidence thereof, and when, in addition to such nonuser, facts are proved and circumstances shown in testimony evincing that intention, then the abandonment is established. In the case of *Roanoke Inv. Co.* v. *Kansas City & S. E. Ry. Co.,* 108 Mo. 50, it is said: "But, while it is true that mere nonuser will not amount to an abandonment, it is well settled that an easement acquired by grant or its equivalent may be lost by abandonment. To constitute an abandonment of an easement acquired by grant, acts must be shown of such an unequivocal nature as to indicate a clear intention to abandon. It is said, however, that abandonment will be more readily inferred when the easement was granted for public purposes than when it was created for private use."

In the case of *Roby* v. *New York Central & H. R. Rd. Co.,*

142 N. Y. 176, it is held that an easement may be abandoned, and the owner of the fee will then become entitled to the possession of the land; and it is therein said: "An easement may be abandoned by unequivocal acts showing a clear intention to abandon, or by mere nonuser, if continued for a long time."

In the case of *Townsend* v. *Michigan Central Rd. Co.,* 101 Fed. 757, the court, in speaking of the abandonment of a right-of-way by a railroad company, said: "This deed conveys an easement or right-of-way for the use and purposes therein stated. * * * Abandonment is a question of intent. From long nonuse it may be found as a matter of fact. To constitute abandonment of a right-of-way there must be a clear, unequivocal and decisive act of the party showing a determination not to have the benefit intended." The abandonment of a grant of an easement of a public nature, like a railroad right-of-way, is more readily presumed from long nonuser. In the case of *Louisville Trust Co.* v. *Cincinnati,* 76 Fed. 296, it was held (quoting syllabus) "that the failure for over 20 years to operate a railway on certain streets included in a franchise granted raises a presumption of abandonment of the grant." In that case it was said: "There are no circumstances in this case tending to show that this company intended at any time to avail itself of the privileges of this grant. There are no circumstances tending to make the intention of this company by this long disuse doubtful."

The question as to whether or not a railroad company has abandoned a right-of-way acquired by it is to a great extent one of intent; but such intention can be established by the acts of the company clearly indicating its purpose not to use such right-of-way and by long nonuser thereof. 2 Elliott on Railroads, 931; 2 Lewis on Eminent Domain, § § 469, 473; *Beattie* v. *Carolina Cent. Rd. Co.,* 108 N. C. 425; *Mobile, Jackson & K. C. Rd. Co.* v. *Kamper,* 88 Miss. 817; *McLemore* v. *Charleston & M. Rd. Co.,* 111 Tenn. 639; *New York, etc., Rd. Co.* v. *Benedict,* 169 Mass. 262; *Hamel* v. *Minneapolis, St. P. & Sault Ste. M. Ry. Co.,* 97 Minn. 334; *McClain* v. *Chicago, R. I. & P. Ry. Co.,* 90 Iowa, 646; *Hannibal & St. Joseph Rd. Co.* v. *Frowein,* 163 Mo. 1.

In the case at bar the testimony clearly establishes the fact

that the railroad company made no effort or attempt at any time to take advantage of the grant that was given to it of this right-of-way. It plainly appears that the sole purpose on the part of Vaught in executing the deed was to obtain the benefits that might accrue to him by the construction of a railroad by the company over this land and to obtain present and not unreasonably delayed future benefits. For almost 20 years the company failed not only to use this right-of-way but to give any attention to it. It was willing, if not anxious, after the lapse of a number of years when it more certainly concluded that it did not want to use this right-of-way or to construct a railroad along this route, to give the right-of-way away to any one desiring it, and this it did. This, we think, clearly proved the intention of the company to abandon this right-of-way.

It is urged that the plaintiffs, J. R. and W. M. Vaught, are estopped from setting up this abandonment by reason of certain contracts made by them relative to this right-of-way with William Grayson, the president of the defendant railroad company, in which, it is claimed, they still recognized the right of the St. Louis, Iron Mountain & Southern Railway Company to this easement over the land. On September 8, 1900, J. R. and W. M. Vaught executed a contract with said Grayson by which they agreed to give to defendant the right-of-way over this land in event it could not get the St. Louis, Iron Mountain & Southern Railway Company to transfer the right-of-way to it. This agreement was made upon the express condition that the defendant would build its railroad over the lands within four years from its date. This condition not being complied with, a renewal contract was executed on March 16, 1904, upon the express condition that the railroad would be built over the lands by September 8, 1906. This latter condition not having been complied with, said Vaughts declared a forfeiture of the contract in September, 1906. But the defendant thereafter and against the protest of plaintiffs took possession of the land and completed the railroad thereon in June, 1907. In May, 1907, the defendant obtained deed from the St. Louis, Iron Mountain & Southern Railway Company for the right-of-way. We do not think that the right of the St. Louis, Iron Mountain & Southern Railway Company to this easement was in any way

affected by said recognition in 1900 or thereafter of any claim that it might make to the right-of-way. The abandonment of this right-of-way by that company was caused solely by its own acts and intention, and not by any failure on the part of its grantor to recognize its claim thereto. That company lost its right to the easement by its own abandonment thereof, and a recognition of any claim thereto by the grantor thereof could not make it accept or retain the easement which it determined it did not want. By such abandonment the easement reverted to plaintiffs, and no recognition thereof by them of any right of the company thereto could stay such abandonment by the company or revest in it the easement after it was abandoned. These two plaintiffs were not estopped from claiming the right-of-way as against the defendant because it did not expend anything therefor and has not been caused in any way to act to its injury by reason of the alleged recognition of that claim. In said contracts it was expressly stipulated that the rights growing therefrom should be forfeited if the railroad was not completed within a specified time. That condition, we think, was broken, and the right-of-way was thereby forfeited and revested in plaintiffs by their re-entry or attempt to re-enter with a declaration of forfeiture. *Schlesinger* v. *Kansas City, etc., Ry. Co.,* 152 U. S. 453; *Moore* v. *Sharpe,* 91 Ark. 407.

2. It is urged that the court permitted the introduction of incompetent testimony relative to the value of the land that was taken by defendant. The plaintiffs introduced a number of civil engineers who had acted as such for a number of years for various railroads and qualified as having a special knowledge as to the peculiar advantages of certain sites for the location of railroads and the value thereof for railroad purposes. They were expert witnesses upon the question of the adaptability or availability of a piece of land for railroad purposes. They were not familiar with agricultural or other lands in the neighborhood where the land in controversy was situated, nor with the value thereof for any purpose other than for railroad purposes. They saw the land in controversy, and carefully examined the gap and all the lands in that vicinity through which a railroad could be possibly located along the route of defendant's proposed line of railroad. They examined

all these lands specially for the purpose of determining whether there was any other feasible route for a railroad through these mountains and the adaptability of the land involved in this suit for that purpose. They testified to facts tending to show a demand for railroad construction in that section of the country, and that this gap or pass located on plaintiff's land was especially available for railroad purposes and was practically the only feasible route through this mountainous country. They then testified to what in their opinion was the fair and reasonable cash market value of the land taken by defendant for its right-of-way. Counsel for defendant urge that the court erred in permitting these witnesses to testify that the land taken by defendant had a pecuniary advantage for a railroad site over all other lands in this vicinity along any possible route for a railroad, because of the great cost in making any other site feasible for the location of a railroad through these mountains; and in this connection the witnesses gave an estimate of the great expense and cost in preparing another site for railroad purposes in comparison with this site, to which testimony objection was made. It is urged that this testimony in effect based the value of the site taken upon the benefit that it might be to defendant and of its necessities to acquire that particular property, rather than on the actual market value thereof and the loss to the plaintiff by the defendant's appropriation thereof. But we do not think that this contention is well founded. The measure of the compensation which the landowner is entitled to recover from a railroad company which has appropriated same for its right-of way is the market value of the land so taken. In estimating that market value it is perfectly competent to consider the availability and adaptability of the land for the very purpose for which it is taken by the railroad company as an element of value which would attract any buyer for that purpose. In order to show the adaptability of the land taken for the purpose desired, it is competent to show the cost and expense that would be necessary to put other land in the condition of the land taken, which condition gives it a peculiar value for the purpose for which it is appropriated. This would not be estimating the damages by reason of the value of the property to the corporation which appropriated it, or by reason of its necessities to acquire

same; but would be simply showing an element of its value to any one who might desire it for that purpose. The owner has a right to obtain the market value of the land based upon its availability for the most valuable purposes for which it can be used. The peculiar circumstances of its location and the character of the surrounding country may be proved in order to show the adaptability of the land taken for the purpose desired because that would be an element of value which the owner would have a right to insist upon in estimating the value of his land. In the case of *Boom Company* v. *Patterson,* 98 U. S. 403, the Supreme Court of the United States has laid down the rule that in determining the value of land appropriated for public purposes the inquiry is, what is it worth from its availability for all valuable uses? This rule has been approved by this court in a number of cases. *Little Rock & Ft. S. Ry. Co.* v. *McGehee,* 41 Ark. 202; *Little Rock Junction Ry.* v. *Woodruff,* 49 Ark. 381; *Kansas City So. Ry. Co.* v. *Boles,* 88 Ark. 533; *St. Louis, I. M. & S. Ry. Co.* v. *Maxfield Co.,* 94 Ark. 135.

The market value of property is to be determined, not by the price of the property for any one particular purpose, but for any and all purposes for which it is likely to have value and induce purchasers. And so it is competent to show that it has a value for a peculiar purpose which would attract buyers, and any testimony is competent to show its adaptability for that peculiar purpose. Its availability for such peculiar purpose may be proved by showing its advantages over other property that might also be probably available for such purpose, for that would be an element of value that any buyer would take into consideration if he wished to purchase the property for such purpose. Testimony, therefore, of the cost and expense of placing other property that might be available for the desired purpose in the condition of the property taken would tend to show the advantages of such property and its true market value to prospective buyers. This was the character of the testimony of which complaint is made. But we think that this testimony was competent. This testimony did not tend to base the value of this gap or pass upon what it was worth to the defendant or upon how profitably it might be employed or used by it. The purpose and tendency of this testimony was to show that this

site had a special pecuniary value over any other place in that mountainous section of the country for the location of a railroad, and thereby to show its availability and adaptability for railroad purposes. Its advantageous location was an element of value, and in determining what was its market value it was competent to show the facts and circumstances which made that location advantageous for railroad purposes which thus gave to it this element of value. The cost and expense of placing any other site in that section of the country in a condition available or adaptable for railroad purposes which the site in controversy possessed would tend to prove the peculiar advantages of this location for such object and its adaptability for such purposes. It was not error to admit such testimony for that purpose. *Little Rock Junction Ry.* v. *Woodruff, supra;* In re *Daly,* 76 N. Y. Supp. 28; *Ferguson* v. *Hubbell,* 97 N. Y. 507; *State Line R. Co.* v. *Playford* (Pa.), 14 Atl. 355; *Seattle & Montana Ry. Co.* v. *Gilchrist,* 4 Wash. 509.

In its instructions the court carefully confined the jury to the market value of the land appropriated by defendant in determining the amount of the compensation therefor to which plaintiffs were entitled, and we think that there was sufficient evidence to sustain the amount of the damages which the jury returned in their verdict.

Upon an examination of the whole case we do not find that any prejudicial error was committed in the trial, and the judgment is accordingly affirmed.