## DENVER & R. G. R. CO. v. MILLS.

(Circuit Court of Appeals, Eighth Circuit. February 22, 1915.)

No. 4141.

1. INJUNCTION ☞47—SUBJECTS OF PROTECTION—TRESPASS.

One in possession of land claiming title will be granted an injunction to restrain a trespass by one who claims under color of title, where the threatened act tends to the destruction of the inheritance.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 100; Dec. Dig. ☞47.]

2. COURTS ☞328—JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.

In a suit in a federal court to restrain the taking without authority of right of way for a railroad over a tract of land, the damage to the remainder of the tract, as well as the value of the land taken, is to be considered in determining the amount involved for jurisdictional purposes.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890–896; Dec. Dig. ☞328.

Jurisdiction of federal courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent Stribling Shoe Co. v. Roper, 36 C. C. A. 459; J. Lewis Mercantile Co. v. Klepner, 100 C. C. A. 288.]

3. ADVERSE POSSESSION ☞7—RAILROADS ☞82—RIGHT OF WAY OVER PUBLIC LANDS—ABANDONMENT.

The title to a railroad right of way, acquired over public lands under a grant by Congress, cannot be acquired against the grantee by limitation; but the right granted may be lost by abandonment in case the land ceases to be used for the special purpose for which the grant was made.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 24–42; Dec. Dig. ☞7; Railroads, Cent. Dig. §§ 213–219; Dec. Dig. ☞82.]

4. RAILROADS ☞82—RIGHT OF WAY—ABANDONMENT.

Whether a railroad company has abandoned a right of way acquired by it is to a great extent a question of intent, and the intent to abandon may be established by acts of the company clearly indicating its purpose not to use such right of way and by long nonuser thereof.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 213–219; Dec. Dig. ☞82.]

5. RAILROADS ☞82—RIGHT OF WAY—ABANDONMENT—REVERTER.

Defendant railroad company built its road over public lands on a right of way granted by Congress. Subsequently a tract of such land was patented to complainant's predecessors in title under homestead entries, subject to defendant's right of way. Some years later defendant relocated its line for a distance of 25 miles, taking up the rails and ties from the old right of way, and complainant took possession of and used so much of the same as was over his land for 13 years, when defendant undertook to construct a spur track 6 miles long over a portion of the same, including complainant's land, to a coal mine. *Held*, that defendant had lost its title to such right of way by abandonment, and that the same reverted to complainant, under Rev. St. Colo. 1908, § 5519, which provides for such reverter in case of a new location of an existing line on repayment of any sum paid therefor.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 213–219; Dec. Dig. ☞82.]

6. EMINENT DOMAIN ☞255—AWARD OF COMPENSATION FOR RIGHT OF WAY—REVIEW ON APPEAL.

An award of compensation for the taking of a railroad right of way cannot be reviewed by an appellate court, where it was made by com-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Index

222 F.—31

missioners under instructions by the court, which were not objected to, that they should view the land and base their award on their own observations and judgment, as well as the other evidence.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 666; Dec. Dig. ☜255.]

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suit in equity by Ogden Mills against the Denver & Rio Grande Railroad Company. Decree for complainant, and defendant appeals. Affirmed.

See, also, 198 Fed. 137.

R. G. Lucas, of Denver, Colo. (E. N. Clark, of Denver, Colo., on the brief), for appellant.

Harry S. Silverstein, of Denver, Colo., for appellee.

Before CARLAND, Circuit Judge, and T. C. MUNGER and YOUMANS, District Judges.

YOUMANS, District Judge. The appellant is the successor of the Denver & Rio Grande Railway Company, which was incorporated in 1870, under the laws of the territory of Colorado, and which was authorized by charter to construct a railway line from Cuchara, in Huerfano county, Colo., westward to Alamosa, in Conejos county, Colo. By act approved June 8, 1872, Congress granted to said railway company and its successors and assigns "the right of way through the public domain one hundred feet in width on each side of the track," together with certain adjacent lands, and also certain privileges similar to those granted to the Union Pacific Railroad Company. Afterwards the time to build the road was extended by Congress to 1882. The railway company completed a narrow gauge line of railroad from Cuchara westward to La Veta, in Huerfano county, in 1876. It completed its line westward to Alamosa and began running trains thereon July 4, 1878. The land described in the bill is a 320-acre tract, and lies about a mile and a half west of La Veta. The title was originally acquired from the government by homestead entries made in 1882. Notation was made on the receipts issued by the United States land office that the entries were subject to the right of way of the Denver & Rio Grande Railway Company. The patent for each homestead referred to the number of the final certificate, but did not except the right of way.

About May, 1899, the Denver & Rio Grande Railroad Company, the successor of the Denver & Rio Grande Railway Company, acquired a location for a new and different line for a distance of at least 25 miles in Huerfano and Costillo counties from a point a short distance west of La Veta to a point between there and Alamosa. The point of diversion began a short distance east of the lands described in the bill. The railroad company procured from the then owners of such lands the right of way for the new line. The deeds for that purpose were obtained from the adult owners, and the title of certain minors was acquired by condemnation. The company constructed a standard gauge

track over the new line, and on November 12, 1899, removed the rails and ties from the old line between the points at which the new line began and ended. When the rails and ties were removed, all of the original right of way included within the exterior boundaries of the 320-acre tract was fenced as a part of that tract, irrigation ditches were cut across it, and some of it was cultivated. During the years 1905 and 1907, the entire tract was conveyed to one Fred C. Sager, by the heirs of the original entrymen. On April 28, 1911, Sager conveyed the property to J. A. Ownbey, who was the agent of appellee. On May 22, 1911, Ownbey instituted proceedings for registration of title under the so-called Torrens law of Colorado, and prosecuted the same to a final decree. On August 29, 1911, Ownbey conveyed the property to appellee. Since the removal of the ties and rails on November 12, 1899, the entrymen and their successors in title have returned the entire 320 acres for taxation, and have paid the taxes thereon.

In the annual return for taxation for 1899 by appellant to the state board of equalization, that portion of the line from which the rails and ties had been removed was described as "Abandoned Track Veta Pass Line." In subsequent annual returns it was described as "Unused Narrow Gauge Track," "Unused Grade over Veta Pass," "Unused Track and Grade," and "Unused Grade and Track." Assessments were made according to such returns, and taxes paid by appellant. On January 15, 1906, in consideration of the payment of $50 annually, appellant executed an instrument, called a "license," to the board of county commissioners of Huerfano county to use 12.8 miles of the old right of way for the purposes of a free public highway. The term was one year, and thereafter at the option of the railroad company, to be terminated upon 60 days' written notice. On June 1, 1912, the railroad company entered into a contract with the Alliance Coal Company whereby, in consideration of the payment by it to the railroad company of the sum of $24,164, the latter agreed to construct a track to the mines of the coal company, which were situated upon or near the old right of way. The distance was 6.27 miles. On June 1, 1912, the railroad company entered upon the tract of land described in the bill and began constructing a road to the mines. On June 12, 1912, the appellee filed his bill, alleging that the appellant, acting under an unfounded claim, was commencing to construct a railroad track across his land without having acquired a right of way therefor, and sought an injunction. A preliminary injunction was issued on July 3, 1912, and appellant appealed therefrom to this court. On August 14, 1912, it filed an answer, claiming title to the right of way, and at the same time a cross-bill to quiet its title thereto. In the event that the court should hold against its claim of title, appellant prayed in its cross-bill that injunction be withheld, or suspended, and that it be permitted to acquire title by condemnation. On September 27, 1912, on appeal, an order was entered in this court to the effect that the injunction was properly issued, but directing the lower court to suspend the injunction and permit appellant to proceed with the construction of its line upon giving bond, and further directed the lower court to determine, in the regular course of equity proceedings, the question whether or not the railroad com-

pany still had its right of way, as it claimed, over the property in dispute, and, if it determined that it had, to enter a decree accordingly; on the other hand, if it determined that it had not, then to ascertain and assess appellee's damage for the taking of the right of way. The court below found that appellant was not entitled to a right of way, and ascertained what appellee's damages were, and adjudged the amount against appellant. This is an appeal from that decree.

The assignment of errors makes the following specifications: (1) That the lower court had no jurisdiction to hear and determine this action, because appellee had a plain, adequate, and complete remedy at law. (2) That the lower court was without jurisdiction because the amount in controversy did not exceed $3,000, exclusive of interest and costs. (3) That the court erred in finding and decreeing title to the disputed right of way in appellee. (4) That the court erred in admitting the testimony of the witnesses James A. Ownbey and Joseph K. Kinkaid. (5) That the court erred in awarding appellee $1,000 for the old grade. (6) That the allowance of mileage to J. A. Ownbey as a witness was unauthorized.

[1] 1. At the time of the entry by the appellant on June 1, 1912, the appellee and his grantors had been in possession of the old right of way for a period longer than that required to give title under the statute of limitations of Colorado. Their possession had been continuous, open, notorious, and adverse. Irrigation ditches had been cut across the old right of way. All of it susceptible of cultivation had been put into cultivation. The appellant entered under a claim of right, for the purpose of laying its track, with a full knowledge, however, of the adverse possession of appellee and the length of time such possession had continued. Appellant now maintains that appellee had a plain, adequate and complete remedy at law, and that therefore there was no jurisdiction in a chancery court to entertain this suit and issue an injunction.

In the case of Livingston v. Livingston, 6 Johns. Ch. (N. Y.) 497, 10 Am. Dec. 353, the rule was laid down that equity will interpose to prevent irreparable mischief. The rule has since been enlarged to the extent of holding that one in possession, claiming title, will be granted an injunction to restrain a trespass by one who claims under color of title where the threatened act tends to the destruction of the inheritance. More v. Massini, 32 Cal. 590; Scudder v. Trenton & Delaware Falls Co., 1 N. J. Eq. 694, 23 Am. Dec. 756; Falls Village Water Power Co. v. Tibbetts, 31 Conn. 165; Johnston v. Hyde, 25 N. J. Eq. 454; Pennsylvania Co. v. Ohio River Junction R. Co., 204 Pa. 356, 54 Atl. 259; Clark v. Smith, 13 Pet. 195, 10 L. Ed. 123; Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; Pittsburg, etc., R. Co. v. Fiske, 123 Fed. 760, 60 C. C. A. 621; Chapman v. Toy Long, 5 Fed. Cas. 497, No. 2,610; 22 Cyc. 826.

We think there was ample ground for the issuance of the injunction. But that question is no longer open in this court. In the appeal from the order granting the injunction this court said in its decree:

"Upon consideration of the appeal from the injunction in this case, which was granted by the court below before the filing of the answer and cross-bill,

nd upon consideration of the motion of the appellant in this court upon the complaint, the answer, and the cross-bill to suspend the injunction and permit the railroad company to enter upon the land in dispute and construct and operate its railroad, pending the suit, across and along the tract whose title is in dispute herein, it is adjudged and ordered that, to the extent hereafter stated, the motion should be and is granted, that the original injunction in accordance with the decision of this court in City of Newton v. Levis, 79 Fed. 15, 25 C. C. A. 161, was not wrongfully granted, and the order for its issue should not be reversed, and is affirmed; that upon consideration of the motion it is adjudged and ordered that this cause be immediately remanded to the court below, and that the said court be, and it is hereby, ordered and directed to proceed with convenient speed in accordance with the views expressed in Northern Pacific R. R. Co. v. St. Paul Railroad Co. (C. C.) 4 Fed. 688, to determine in the regular course of equity proceedings the question whether or not the railroad company still has its right of way, as it claims, over the property in dispute, and if it determines that it has, to enter a decree accordingly; on the other hand, if it determines that it has not this right of way, then that it proceed to determine the necessity for the taking of the tract which in that case the railroad company desires to condemn, and if it determines that there is such necessity, then to ascertain and determine the damages resulting from such taking, and upon the ascertainment of such damages to render the proper decree."

That adjudication became the law of this case so far as this court is concerned. 3 Cyc. 395; Supervisors v. Kennicott, 94 U. S. 498, 24 L. Ed. 260; The Lady Pike, 96 U. S. 461, 24 L. Ed. 672; Stewart v. Salamon, 97 U. S. 361, 24 L. Ed. 1044; Clark v. Keith, 106 U. S. 464, 1 Sup. Ct. 568, 27 L. Ed. 302; United States v. New York Indians, 173 U. S. 464, 19 Sup. Ct. 487, 43 L. Ed. 769. By that decree it was found that the injunction was properly issued and the order for its issuance was affirmed.

[2] 2. The bill alleges that the amount in controversy exceeds the sum of $3,000, exclusive of interest and costs. This is denied in the answer. It is contended by counsel for appellant that the amount in controversy is to be determined by the value of the strip of land actually taken, which was found to be $425, excluding the sum of $1,000 allowed as the value of the original grade. The sum of $4,075 was allowed as damages to the remainder of the tract. We think that such damages are to be considered, as well as the value of the land taken. Together they make up the amount in controversy. Therefore the jurisdictional amount is shown to be in accordance with the allegation of the bill. Hagge v. K. C. S. Ry. (C. C.) 104 Fed. 391; Bureau of National Literature v. Sells (D. C.) 211 Fed. 379; Simkins, Federal Equity Suit, 185.

[3, 4] 3. The claim of title on the part of appellee is based on two grounds, abandonment and adverse possession. This right of way having been granted by Congress over the public lands of the United States, the title thereto cannot be acquired against the grantee by limitation. Northern Pacific Railway v. Townsend, 190 U. S. 267, 23 Sup. Ct. 671, 47 L. Ed. 1044. In the last-named case the court said:

"In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted. This being the nature of the title of the land granted for the special purpose named, it is evident that to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use would be to allow that to be done by indirection which could not

be done directly, for, as said in Grand Trunk Railroad Co. v. Richardson, 91 U. S. 454, 468 [23 L. Ed. 356], 'a railroad company is not at liberty to alienate any part of its roadway so as to interfere with the full exercise of the franchises granted.'"

This doctrine is reaffirmed in the cases of Northern Pacific R. Co. v. Ely, 197 U. S. 1, 25 Sup. Ct. 302, 49 L. Ed. 639, and Union Pacific Railroad Co. v. Snow, 231 U. S. 204, 34 Sup. Ct. 104, 58 L. Ed. 184. The Townsend Case, however, recognizes the implied condition on which the grant was made; that is, "reverter in the event that the company ceased to use or retain the land for the purpose for which it was granted."

In the case of Railroad Co. v. Baldwin, 103 U. S. 429, 26 L. Ed. 578, this statement is made as to the congressional grant of right of way over public lands:

"It is a present absolute grant, subject to no conditions except those necessarily implied, such as that the road shall be constructed and used for the purpose designed."

The authorities above quoted from recognize that the right of way may be abandoned. "The question as to whether or not a railroad company has abandoned a right of way acquired by it is to a great extent one of intent; but such intention can be established by the acts of the company clearly indicating its purpose not to use such right of way and by long nonuser thereof." Gurdon & Ft. Smith Railroad Co. v. Vaught, 97 Ark. 234, 133 S. W. 1019.

[5] In this case the railroad company, for a distance of 25 miles or more, made a relocation of its line and ran all of its trains over the line thus relocated. The rails and ties on the original line were taken up, and the telegraph poles were cut down. This was done on or about November 12, 1899. No attempt was made to use any part of the old right of way for railroad purposes until June 1, 1912, a period of almost 13 years. It is contended that it never was the intention of the railroad company to abandon this old right of way, and that such intention is indicated by a letter to Binger Hermann, Commissioner of the General Land Office, of date November 21, 1900. Counsel for appellant emphasize the following statement in that letter:

"There are stations and industries on the old line which we still desire to reach, and it is therefore not abandoned."

The entire letter is as follows:

"Sir: The Denver & Rio Grande Railroad Company has received through the register and receiver at Pueblo copy of your letter to them of November 6th, calling attention to map and field notes in duplicate, filed by the Denver & Rio Grande Railroad Company, showing the definite location of its line of road over La Veta Pass from a point in the S. E. ¼ N. W. ¼, Sec. 20, Tp. 29 S., R. 68 W., to a point on the east boundary of the Sangre de Cristo grant, in unsurveyed Tp. 29 S., R. 70 W. We note your suggestion that the map does not describe this route as an amended line, and that the company should therefore furnish a statement as to the object of said line, and, if it is filed as a branch line, evidence of the company's authority under the state laws to construct the same should be furnished. We would respectfully report, in reply thereto, that, as we consider the matter, this is not to be considered either as an amended line or as a branch line, but as a new route for a short distance between termini.

"The Denver & Rio Grande Railroad Company has made a standard gauge route where it formerly had a narrow gauge route from Walsenburg west to Alamosa and beyond. In making a standard gauge line it was necessary to reduce grades and curvatures, which required a new route over the short distance from the old station of La Veta to what is called Wagon Creek Junction, near the station called Placer, on the old line. There are stations and industries on the old line which we shall still desire to reach, and it is therefore not abandoned, but the track thereon is still maintained; but for the through traffic to and from the San Luis Valley, this new standard gauge route takes the more southern pass, and, as above suggested, with lesser grade and smaller curvatures. According to our view of our statutes relating to the powers of railroad corporations, it is not necessary to designate the specific route to be followed between termini, and, if not necessary to state such specific route in the first instance, certainly not necessary to state a change in such specific route, or the making of a double track, even though one of the tracks constituting such double track be at some considerable distance separated from the other. See section 97, c. 19, Gen. Stats. of Colo.

"We do not think that this line can in any sense come under the provisions of section 127 of the same chapter relating to branch lines. It is but an additional route for a short distance for the main line, for the purpose of the more convenient and economical transportation of the business of San Luis Valley and country beyond. We respectfully submit that our application for rights of way for this new line, under the circumstances, is perfectly legitimate, and in strict accordance with the spirit of the right of way acts, and we respectfully ask that the maps be approved, and should be pleased to have advices from you as to your action, or as to any further information desired from the company preliminary thereto."

It is true that the statement relied upon appears in the letter. It is made in connection with other statements which must be noted. The entire sentence in which the statement appears reads as follows:

"There are stations and industries on the old line which we shall still desire to reach, and it is therefore not abandoned, but the track thereon is still maintained; but for the through traffic to and from the San Luis Valley, this new standard gauge route takes the more southern pass, and, as above suggested, with lesser grade and smaller curvatures."

The statement that there are stations and industries on the old line which appellant still desired to reach is followed by the statement that the track is still maintained. That statement was not true. The reference to "through traffic" carries with it the implication that local traffic was being hauled over the old line. That was not true. The letter also sought to convey the impression that appellant was at that time serving stations and industries along the old line. That was not true. No stations or industries along the old line were being served. The track was not maintained. No local traffic passed over the old line, the railroad company had rendered itself incapable of carrying traffic thereon, and it ceased to use that portion of the grant for railroad purposes. The letter above quoted stated to the Commissioner of the General Land Office that the making of the new line was the same as the construction of a double track. It is evident that the letter was framed for the purpose of deceiving the Commissioner of the General Land Office; the object being to secure a right of way over public lands traversed by the new line. Later, in 1906, the railway company went so far as to rent out a portion of the roadbed for a wagon road, a use not contemplated in the original grant.

When the railroad company on or about the 1st of June, 1912, undertook to lay a track on the land described in the bill, it did not intend to

relay the entire portion from which the track and ties had been taken in November, 1899. The purpose was to lay a track for a distance of 6.27 miles to a coal mine of the Alliance Coal Company. This was simply a spur track, as shown by the contract between the railroad company and the coal company, and was put down for the consideration of $24,164. It was not a reconstruction of the old line. The testimony is ample to warrant the finding that there was an abandonment of the right of way.

4. Since there was an abandonment, the question arises to whom did the right of way revert? The original entries were made subject to the right of way. The patents were issued for the entire tract, but did not include the right of way so long as it was used for the purpose contemplated by the grant. In the face of the patents, it cannot be said that the title reverted to the United States. The estate of the railroad company was, to use the language of the Townsend Case, "a limited fee." Upon the extinction of that title by abandonment it was merged in the title held by those holding under the patentees, and the land came within the provision of section 5519 of the Revised Statutes of the state of Colorado, which is as follows:

"That any railroad company having located its line of road, whether the same is completed or not, may make a new location of its line, and may acquire the right of way for such new line, in the same manner as is now provided for acquiring the right of way by the statutes of Colorado. Provided, that in acquiring said new right of way the previous right of way shall revert to the owner or owners of the land through which said previous right of way was granted, on the payment or tendering payment to the railroad company the amount assessed by the board of appraisers and paid by said railroad company for said previous right of way."

Nothing having been paid for the right of way, that portion of the section requiring payment did not apply. The court was right in finding and decreeing that appellee had title to the right of way in dispute.

[6] The commissioners appointed by the court to hear testimony and determine the value of the lands taken found that the old grade was worth $1,000 and added that sum to the value of the land. The record contains the following stipulations:

"It is hereby stipulated and agreed that, for the purposes of the appeal herein, the defendant need not print the evidence taken before the commissioners herein, and that such evidence showed the length, breadth, height, and slope of the old existing railroad grade referred to in the report of the commissioners herein, and that said commissioners viewed the same, and that there was no testimony before such commissioners showing the amount of money saved to defendant by reason of such grade, or what it would have cost defendant to have constructed such grade."

The following instructions were given to the commissioners at the time they were appointed:

"By the order appointing you, you are authorized and directed to go upon the premises and view them, so that you may have a more intelligent understanding of the evidence from knowing the lay of the land and the location of the railroad over it; and you may and should use and take into consideration and act upon your own observation, judgment, impressions, and information obtained from such view, together with all the other evidence in the case, in fixing the amount of compensation. The opinions of witnesses are to aid and assist you, if possible, in arriving at a just conclusion; but you are not to lay aside your own observation and judgment, and accept the conclu-

sions of witnesses if you think them extravagant, in being either too high, or too low, or incorrect. It is entirely a question for the exercise of your best judgment, adapting the testimony of the witnesses to the land and to the location of the railroad upon it, as you see it, and also using your own judgment and knowledge in the matter. * * * The commissioners are instructed that you have had an opportunity in this case to go upon and view the premises. This was for two purposes. In the first place, it was in order to enable you to better understand and apply the evidence submitted before you, and also in order that you may regard the facts which you have learned upon your own observation and view of the premises as so much additional evidence. * * * The commissioners are instructed that, in arriving at your estimate in this case, you should be governed by the evidence submitted, both the evidence of the witnesses which you have heard and the evidence gathered from your view and observation of the premises."

These instructions appear to have been agreed to by appellant. Whether that be true or not, appellant did not object to them. Those instructions expressly state the view should be regarded as evidence. Therefore the finding of the commissioners, based upon their "own observation, judgment, impressions, and information obtained from such view, together with all the other evidence in the case," was in accordance with instructions to which appellant made no objection. It cannot be heard to raise an objection now. The commissioners were required to ascertain the value of the property for the most advantageous uses to which it might be applied. Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; United States v. Chandler-Dunbar Co., 229 U. S. 53, 33 Sup. Ct. 667, 57 L. Ed. 1063; Gurdon & Ft. Smith Railway Co. v. Vaught, 97 Ark. 234, 133 S. W. 1019.

The allowance of $1,000 for the old grade was within the power of the commissioners and does not appear to be excessive.

5. The objection to the admission of testimony is not urged before this court, and must therefore be regarded as abandoned.

6. The objection to the allowance of mileage to the witness Ownbey is without merit. He was not a party to the suit. He had no interest in the property at, or subsequent to, the time the suit was brought.

It follows that the decree of the District Court should be affirmed.