FREDERICK W. ETHEREDGE, APPELLANT, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLEE.

FILED MARCH 11, 1921.   No. 21386.

1. Public Lands: GRANT OF RAILROAD RIGHT OF WAY. By granting a right of way of 200 feet in width to a railroad, congress must have determined that a strip of that width was necessary for the proper construction, operation, and improvement, and future necessities of the road, and the general public has no right to conjecture that any portion of the right of way is not necessary for railroad purposes.

2. ———: ———. The fact that only a portion of the right of way granted to a railroad company by the general government has ever been occupied for railroad purposes is immaterial.

3. Adverse Possession: RAILROAD RIGHT OF WAY. An individual cannot for private purposes acquire by adverse possession any portion of a right of way granted by the United States to a railroad company in the manner and under the conditions as the right of way was granted in the instant case, except by such acts as constitute adverse possession since the passage of the Norris act of June 24, 1912, 37 U. S. St. at Large. ch. 181, p. 138.

APPEAL from the district court for Cass county: JAMES T. BEGLEY, JUDGE. Affirmed.

A. L. Tidd, for appellant.

Byron Clark, Jesse L. Root, W. A. Robertson and J. W. Weingarten, contra.

TIBBETS, C.

This is an action by the plaintiff to enjoin defendant from cutting down trees on what plaintiff alleges is a part of lot 6 in the south half of the northwest quarter of section 32, township 12 north, of range 9 east of the sixth P. M., in Cass county, Nebraska, of which plaintiff alleges he is the owner. The evidence is undisputed that the premises in controversy lie within the congressional grant of right of way to the defendant's grantors, being land granted by the congress of the United States to the Burlington & Missouri River Railroad Company over the public lands of the United States and the state of Nebraska, of 200 feet in width by an act passed on the 2d day of July, 1864 (13 St. at Large, ch. 216, p. 364), amending an act of July 1, 1862, (12 U. S. St. at Large, ch. 120, p. 496), relating to the construction of the Union Pacific Railway Company. There is no controversy over the fact that defendant has succeeded to the interest of the original grantor by mesne conveyances to all its rights, title and privileges. The contention of the plaintiff is that the land in controversy had not been fenced or used in any manner by the company for over 30 years and during all of that period the plaintiff and his immediate grantors have been in the actual, continuous, open, notorious, exclusive, peaceable, and adverse possession of the same.

The only question involved herein is whether the lands granted by the government, as in the instant case, can be acquired by adverse possession. The evidence discloses that at the time of the grant to the railroad company the land in controversy was public land; that the grantors of the defendant constructed a line of railroad over the right of way granted, and trains have been operated continuously on and over the same, but not immediately on the part of the right of way herein involved. Where the right of way has been acquired by grant from the general government to public lands, and the railroad is built and in continuous operation over the lands so granted, title cannot be acquired to any portion of the same by adverse possession or by nonuser of a portion thereof. This question is not here for the first time. Several, if not all, of the contentions relied upon by plaintiff were settled by this court in the case of the *Union P. R. Co. v. Wooster,* 104 Neb. 421, where it is held:

" The Norris act will not be given retrospective operation to aid an abutting landowner in acquiring title to part of a railroad right of way by adverse possession.

" To constitute an abandonment by a railroad company of a part of its right of way, there must be a clear intention to abandon. Evidence examined; *held,* there was no intention to abandon that portion of the right of way in suit.

" Whenever a railroad company operates trains daily over its right of way, it is a constant assertion of its intention to use and occupy the full width of same for railroad purposes.

" Mere nonuser by a railroad company of a part of its right of way does not constitute an abandonment of such unused portion."

The following cases seem to be conclusive against plaintiff's contention, not only in this jurisdiction, but his position is also contrary to the decisions of the federal courts: *McLucas v. St. Joseph & G. I. R. Co.,* 67 Neb. 603; *State v. Grimes,* 96 Neb. 719; *Oregon S. L. R. Co. v. Quigley,* 10

Idaho, 770; *Northern P. R. Co., v. Smith,* 171 U. S. 260; *Northern P. R. Co. v. Townsend,* 190 U. S. 267; *Union P. R. Co. v. Laramie Stock Yards Co.,* 231 U. S. 190.

The principal case relied upon by plaintiff in support of his position on abandonment is that of *Denver & R. G. R. Co. v. Mills,* 222 Fed. 481, to the effect that, where there was an abandonment of the right of way, the right of entry might be resorted to. This phase of the question is thoroughly discussed in the above citations, and the reasoning and conclusions arrived at therein are in their essential elements contrary in every respect to the contention of plaintiff as to the right of acquirement by abandonment as applied to the instant case. Also in the case of *Denver & R. G. R. Co. v. Mills, supra,* the decision of that court depended entirely upon the peculiar conditions existing therein, and whether there was an abandonment. The rule is undoubtedly that a railroad company only having the right of easement, upon its abandonment of the grant to it for railroad purposes, a party receiving a patent from the government which, were it not for the easement formerly granted to the railroad company, would include the easement granted to the railroad, and there was no reservation in the patent of the easement, to acquire title to the land so abandoned, or in event that it was abandoned and was not covered by any patent issued by the government, it might perhaps be homesteaded as government land, but in the *Mills* case there was an entirely different condition. That was a grant by the government to the railroad company. Several years after this railroad was completed, and 17 years after the homestead entry, the railroad company relocated its line of road at a distance of 25 miles; it took up its rails and ties from the original right of way, a part of which crossed the homestead referred to, and constructed its line of road along the new line. A better idea may perhaps be gained of the reason of the holding of the court in the *Mills* case from a portion of the opinion of the court in that case. The court say:

" In this case the railroad company, for a distance of 25 miles or more, made a relocation of its line and ran all of its trains over the line thus relocated. The rails and ties on the original line were taken up, and the telegraph poles were cut down. This was done on or about November 12, 1899. No attempt was made to use any part of the old right of way for railroad purposes until June 1, 1912, a period of almost 13 years. * * * No stations or industries along the old line were being served. The track was not maintained. No local traffic passed over the old line, the railroad company had rendered itself incapable of carrying traffic thereon, and it ceased to use that portion of the grant for railroad purposes. * * * When the railroad company on or about the 1st of June, 1912, undertook to lay a track on the land described in the bill, it did not intend to relay the entire portion from which the track and ties had been taken in November, 1899. The purpose was to lay a track for a distance of 6.27 miles to a coal mine of the Alliance Coal Company. This was simply a spur track, as shown by the contract between the railroad company and the coal company, and was put down for the consideration of $24,164. It was not a reconstruction of the old line."

In the instant case there have been no such acts, as the authorities have held, as would constitute abandonment. The nonuser of a portion of the right of way for any period of time of itself does not constitute abandonment. Where an easement is granted by the government to a railroad across public land, and the road is built upon the right of way and trains continuously operated thereon, it is no evidence of abandonment that it did not cover the entire right of way. In the instant case it is true that for years the railroad company did not have its rails upon or use the land in controversy, but the necessity arose, as the evidence discloses, for the construction of an additional line, and it became necessary to occupy this contested portion of land, and as an essential part of the operation in building the same, it became necessary to cut down the trees in

question. We are of the opinion that under the state and federal authorities heretofore cited, wherein this question has been in all of its phases repeatedly determined, there can be no question but what the injunction should be denied and the plaintiff be declared to have no present right, title, interest, claim or demand in or to the premises in controversy. We can see very readily that, if the railroad company had acquired the land in controversy by condemnation proceedings under the right of eminent domain, or purchased the same, and then had abandoned them, the right to hold by adverse possession might possibly lie, but not under the conditions existing in the case at bar.

Another question arises and has been discussed in the brief of the defendant, i. e., that the plaintiff is not entitled to insist at this stage of the proceedings upon the theory of an abandonment; that he did not plead it in his petition, and it was not an issue made in the district court, and therefore cannot be raised for the first time in this court, and has cited us to several authorities which seem to sustain that contention, among which are the following: *Nielsen v. Central Nebraska Land & Investment Co.,* 87 Neb. 518; *Gibson v. Arnold,* 5 Neb. 186; *Omaha Fire Ins. Co. v. Dierks & White,* 43 Neb. 473; *Chapman v. Brewer,* 43 Neb. 890; *Hyde v. Hyde,* 60 Neb. 502. However, it does not become necessary to decide this question. In view of the law and the undisputed facts, we are of the opinion that the judgment of the district court was clearly right, and recommend that the same be affirmed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

AFFIRMED.