WEEMS H. McLUCAS ET AL. v. ST. JOSEPH & GRAND ISLAND RAILWAY COMPANY.*

FILED FEBRUARY 17, 1903.  No. 12,551.

Commissioner's opinion, Department No. 1.

1. **Railroad: PUBLIC HIGHWAY.** Under the provisions of section 4, article 11, of the constitution of Nebraska, a railroad constructed and operated in this state is a public highway.

2. ———: ———: INTEREST OF GENERAL PUBLIC: TITLE. The general public has the same interest in the preservation and mainte-

Syllabus by court; catch-words by editor.
* Rehearing allowed. See opinion, page 612, *post*.

nance of railroads as it has in the maintenance of other high-
ways, and the title to a part of a railroad's right of way, while
such road is being operated as a common carrier, can not be
divested by adverse possession.

ERROR from the district court for Jefferson county.
Action in ejectment brought to recover possession of a
strip of land 100 feet wide, included between a line 150
feet from the central line of the railroad track and a line
fifty feet from such central line, the right of way being
300 feet in width. Plea of prescription by adverse posses-
sion. The cause was submitted on an agreed statement of
facts, in which it was stipulated that the defendants had
had the actual, notorious, exclusive and uninterrupted
possession of the premises in controversy for fifteen years.
Tried below before STULL, J.   Judgment for plaintiff.
*Affirmed.*

NOTE.—The real question involved in this case was, did
the maxim, *Nullum tempus occurrit reipublicœ*—no time
runs against the state, apply to this case.   If the railroad
is the mere tenant of the state, adverse possession could
not prevail against the sovereignty.—W. F. B.

*Hon. Edmund H. Hinshaw,* for plaintiffs in error:

An easement may be abandoned, and extinguished by
non-use.   *Henderson v. Central P. R. Co.,* 21 Fed. Rep.,
358.

Mere non-user will not extingiush an easement granted
by deed; but adverse possession for the statutory period
will.   Washburn, Easements, pp. 717, 719.

An easement to take water which is appurtenant to a
mill, is lost when the mill goes to decay, or is destroyed
and not rebuilt.   *Day v. Walden,* 46 Mich., 575.

*W. H. Barnes,* also for plaintiffs in error.

*M. A. Reed, W. P. Freeman* and *M. A. Hartigan, contra.*

*Benjamin T. White* and *James B. Sheean, amici curiæ:*

The questions of law involved in this suit being of general interest to the railroads of this state, and being involved in a case soon to be submitted by us to your honors, we ask leave to file herein this brief or memoranda of authorities. We appreciate that counsel in the case have carefully and ably briefed the main questions at issue. The only purpose of this brief, therefore, is to present more fully the authorities on the questions incidentally at issue and to avoid having the same disposed of without a thorough consideration thereof.

The propositions to which the court's attention will be directed are as follows:

1. A railroad company's right of way is held for public use and is, therefore, a public highway, and title thereto can not be lost or acquired by adverse possession.

2. A right of way acquired by land grant from the government can not be lost by adverse possession, the fee thereto being in the government.

3. In those states where a right of way may be lost by adverse possession, such possession must be inconsistent with the easement of the railroad and actual notice thereof must be given the company.

That railroads, though constructed by private corporations and owned by them, are public highways, has been the doctrine of nearly all the courts ever since such conveniences for passage and transportation have had any existence. *Olcott v. Supervisors*, 83 U. S., 678, 694.

A railroad right of way is such a public use as to prevent the running of the statute of limitations, or the acquisition of adverse title thereto by prescription. *Southern P. R. Co. v. Hyatt*, 132 Cal., 240, 64 Pac. Rep., 272.

This grant is a conclusive legislative determination of the reasonable and necessary quantity of land to be dedicated to this public use, and it necessarily involves a right of possession in the grantee and is inconsistent with any adverse possession of any part of the land embraced

within the grant. *Southern P. R. Co. v. Burr*, 86 Cal., 279, 284; *Wilcox v. Jackson*, 13 Pet. [U. S.], *498; *United States v. Northern P. R. Co.*, 152 U. S., 284; *Hastings & D. R. Co. v. Whitney*, 132 U. S., 357; *Stringfellow v. Tennessee Coal, Iron & Railroad Co.*, 117 Ala., 250; *Wood v. Missouri, K. & T. R. Co.*, 11 Kan., 323, 349.

It is held that possession and use by the owner of the fee, of a portion of land covered by a railroad right of way, for agricultural and the like purposes, is not adverse so as to confer title upon the land owner. And this applies as well when the portion of the right of way is fenced as when unfenced. The owner of the fee having the right to make any use of the land covered thereby not inconsistent with the use by the railroad company, it must necessarily follow that the inclosure and cultivation by him of portions of the right of way not in present use by the railway company, is permissive and not inconsistent with the use of the premises by the railway company, and hence not adverse so as to confer title by adverse possession. One of the essential elements of adverse possession, is that the possession must be exclusive and inconsistent with the estate against which it is sought to be applied.

In the case of *Slocumb v. Chicago, B. & Q. R. Co.*, 57 Ia., 675, the action was brought to enjoin the railroad company from entering upon or using or in any manner interfering with a strip of land, about twenty-one feet in width, to which plaintiff claimed title by adverse possession. It appeared that the predecessor in interest of the defendant railroad company, had procured, by parol agreement with plaintiff's grantors, a right of way seventy feet in width over the premises in question, and had entered upon and constructed a railroad thereover. Plaintiff secured her title after the construction of the road, and under a conveyance which recited that the premises were conveyed subject to the right of way of the railroad company. At the time of acquiring her title a fence stood within fourteen feet of the railroad track, and there was nothing of record showing the extent of the right of way.

After plaintiff had been in possession of the strip in question for more than ten years, the defendant moved in the fence upon plaintiff's inclosure about twenty-one feet, and proceeded to construct an additional railroad track thereon. The court held, that notwithstanding the fence stood within fourteen feet of the railroad track when plaintiff acquired her title, she was advised by the presence of the railroad track and the recitals in the conveyance, as well as the law under which the company could have acquired a one hundred foot right of way, that the railway company claimed a right of way over the premises, and by inquiry could have ascertained the extent thereof.

*Joseph W. Carr,* also *amicus curiæ.*

*W. A. Stewart* and *Hector M. Sinclair, amici curiæ,* on rehearing.

*R. A. Brown* and *John Heasty,* also (on rehearing) for defendant in error.

*J. W. Deweese* and *Frank E. Bishop,* on September 19, 1902, filed an additional memorandum for defendant in error.

KIRKPATRICK, C.

This is an action in ejectment brought in the district court for Jefferson county by the St. Joseph & Grand Island Railway Company, defendant in error, against Weems H. McLucas and John C. McLucas, plaintiffs in error, to recover possession of a strip of land extending along the track of the railroad in the city of Fairbury; being 150 feet wide from the centre of the track. The land was in possession of plaintiffs in error. The petition alleged that defendant in error was a duly incorporated railway company, operating its line of road through Jefferson county as a common carrier of passengers and freight; that it has a legal estate in and was entitled to the immediate possession of the strip of land described in

McLucas v. St. Joseph & G. I. R. Co.

the petition. The answer pleaded that the cause of action stated in the petition did not accrue within ten years next before the commencement of the action, and that plaintiffs in error were at the commencement of the action, and for more than ten years prior thereto had been, in the open, notorious, exclusive, adverse possession of the premises, and that such possession had ripened into a title in fee simple. To this answer, for reply, the railway company filed a general denial. Trial was had to the court, without the intervention of a jury, resulting in a finding and judgment for defendant in error.

There has been a very thorough and painstaking investigation of the questions involved, and the authorities bearing thereon, and an able presentation thereof at the bar of this court, not only by counsel in the case, but by other distinguished counsel, who appear as *amici curiæ*, which has enabled us the more readily to reach a conclusion satisfactory to ourselves.

The trial court found that plaintiffs in error had been in the open, notorious, exclusive possession of the premises in controversy for fifteen years prior to the commencement of the action, and it is not claimed that this finding is not abundantly sustained by the evidence. Relying upon this finding, plaintiffs in error contend that the judgment should as matter of law have gone in their favor. A number of reasons are urged by defendant in error in support of the correctness of the judgment of the lower court, among which are, first, that in jurisdictions where a right of way may be lost to a railroad company by adverse possession—our own claimed not to be of that number—possession, in order to be adverse, must be of a character inconsistent with the easement of the railroad company. In other words, it is said that in such jurisdictions the possession is not adverse as long as it is compatible with the use to subserve which the right of way was in the first instance granted. The ground upon which this contention rests is stated at length and somewhat aptly, by the supreme court of Tennessee, in *Railroad v.*

*French,* 100 Tenn., 209, 66 Am. St. Rep., 752, as follows (p. 753) : "It appears from the record that the railroad company, under its charter, has an easement or right of way over one hundred feet on each side of the centre of its road, and it has been repeatedly held by this court that a user by an adjacent landowner of the right of way up to the line of the road for an indefinite time is not adverse to the road-easement. It may be used for agricultural or any other legitimate and proper purpose. A house may be built upon it and occupied, and it may be inclosed, and the railroad will not lose its easement. The possession for such purpose is consistent with the easement, no matter what kind of a paper title the party in possession may have, and the possession could not be adverse, until the railroad may need the premises and demand them for railroad purposes. Occupancy with a house or inclosure and cultivation and use, are not sufficient to defeat the easement of the road, inasmuch as the road can only demand and take its full right of way when it becomes necessary for railroad purposes, and until then the possession is not adverse." Again, the supreme court of Michigan, in *Matthews v. Lake S. & M. S. R. Co.,* 110 Mich., 170, 172, 64 Am. St. Rep., 336, has said : "We recognize the doctrine that, if the use of the owner of the servient estate be consistent with its use for an existing easement, the owner of the servient estate can not acquire title by such possession."

While there is some conflict, the great weight of authority sustains the doctrine announced above. From among the cases the following may be cited : *East T., V. & G. R. Co. v. Telford's Executors,* 89 Tenn., 293, 10 L. R. A., 855; *Northern Comus Investment Trust Co. v. Enyard,* 24 Wash., 366; *Mobile & O. R. Co. v. Donovan,* 104 Tenn., 465; *Railroad v. French, supra; Union P. R. Co. v. Kindred,* 43 Kan., 134; *Carolina C. R. Co. v. McCaskill,* 94 N. Car., 746; *Southern P. R. Co. v. Hyatt,* 132 Cal., 240, 54 L. R. A., 522. While the following cases, though some are distinguishable from the case at bar, adhere to the

contrary view: *McKinney v. Lanning,* 139 Ind., 170; *Louisville & N. R. Co. v. Quinn,* 94 Ky., 310; *New York, N. H. & H. R. Co. v. Benedict,* 169 Mass., 262; *Woodruff v. Paddock,* 130 N. Y., 618.

A second reason urged, and one upon which we place the determination of this case, is that under the constitution of this state a railroad is a public highway, and that as such, title to its right of way can not be taken from it by adverse possession. Section 4, article 11 of the constitution of this state, is in part as follows: "Railways heretofore constructed, or that may hereafter be constructed in this state are hereby declared public highways, and shall be free to all persons for the transportation of their persons and property thereon, under such regulations as may be prescribed by law." The exercise of the right of eminent domain in the condemnation of land for right of way purposes by railroad companies is wholly inconsistent with any other theory than that the railroad is a public highway; and the universal holding of the courts, so far as we are aware, is that railroads are highways. *Olcott v. Supervisors,* 83 U. S., 678, 21 L. Ed., 382; *San Francisco, A. & S. R. Co. v. Caldwell,* 31 Cal., 367, 371. That the companies operating them may be compelled to transport passengers and freight alike for all persons is well settled. This court has many times so held. That railroads are impressed with a public character, is the more manifestly true under the terms of the constitutional provision quoted. The power of eminent domain is an attribute of sovereignty, and under the provision of the constitution, can only be exercised in the taking of private property for a public use, and then only after just compensation. The power is only coextensive with the necessity of the use. *Welton v. Dickson,* 38 Nebr., 767, 22 L. R. A., 496, 41 Am. St. Rep., 771. The power to acquire title to the right of way of a railroad company by adverse possession, is wholly inconsistent with the right and interest of the general public in the highways of the state. The fact that a railroad is owned and operated by a private corporation, and

that passengers and freight can only be transported thereon upon tracks and in cars constructed especially for that purpose, does not make it any the less a public highway. If a railroad company could lose any portion of its right of way because it has no present or immediate need of it for the actual construction or maintenance of trackage thereon, it might at some time result in so curtailing its right of way and road-bed as to prevent the performance by it of the duties owing to the public, and to perform which it was created. In *Krueger v. Jenkins,* 59 Nebr., 641, this court, speaking by SULLIVAN, J. (the question under consideration being the power to acquire title to a county road by adverse possession), said (p. 643): "The right involved in this litigation is one belonging exclusively to the public at large. Neither Douglas county nor its citizens have any peculiar interest in it. A county does not hold the legal title to country roads within its borders; it has no power of disposition over them; it has no proprietary interest in them; in performing the duties with which it is charged in connection with them, it acts as an agent of the state, and in the interests of the general public. A county, being a mere political subdivision of the state, created for the purposes of government, ought not to be bound by limitation laws any more than the state itself. And, as to property or rights held exclusively in trust for the general public, the decided weight of authority is that such laws have no application." We apprehend that there is no essential distinction between the case cited and that in hand, and can see no reason why the principle invoked in the former should not be accorded controlling force in the latter. The public has the same interest in a railroad as it has in all other public highways of the state, and we are of opinion that title to the unused portion of the right of way of a railroad being operated in this state can not be acquired by adverse possession.

The judgment of the lower court is right, and it is, therefore, recommended that the same be affirmed.

HASTINGS and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed November 5, 1903. *Former judgment of affirmance adhered to:*

1. **Federal Statute:** INTERPRETATION OF THE U. S. SUPREME COURT. The supreme court of the United States is the final expositor of federal statutes, and its decisions construing such statutes and determining their force and effect are conclusively binding upon the state courts.

2. ————: ————: RAILROAD RIGHT OF WAY. According to the decision of the supreme court of the United States in the case of *Northern P. R. Co. v. Townsend*, 190 U. S., 267, 23 Sup. Ct. Rep., 671, a congressional grant of a right of way for the construction of a railroad is upon an implied condition, which is inconsistent with the acquisition in any manner of any part of such right of way by a private individual or corporation.

3. **Railroad Right of Way:** GRANT FROM GOVERNMENT: STATUTE OF LIMITATIONS. The right of way of the Grand Island Railway Company, having been acquired by grant from the general government for the construction of a railroad, the statute of limitations is not a defense to an action brought by said company to recover possession of a strip of land within such right of way.

SULLIVAN, C. J.

This was an action of ejectment, brought by the railroad company to recover possession of a strip of land situated within its right of way in the city of Fairbury. Defendants asserted title by adverse possession, and, according to the findings of fact, proved exclusive occupancy under claim of right for fifteen years. The trial court, however, held that the statute of limitations had no application to the case and accordingly gave judgment in favor of the plaintiff. This judgment was brought here for review and affirmed for the reasons stated in the opinion of Commissioner KIRKPATRICK (*ante*, p. 607). Our faith in the validity of these reasons was somewhat shaken

by the argument supporting the motion for a rehearing, but whether they are sound or unsound it is, at this time, unnecessary and inadvisable to determine. The plaintiff acquired its right of way for the construction of a railroad by congressional grant, and it contends that the implied condition upon which the grant was made necessarily excludes the theory that a private individual or corporation may obtain title to any portion of such right of way by adverse possession or otherwise. The question thus raised involves a construction of a federal statute, the act of July 23, 1866,* and is therefore a federal question, upon which, as the law now stands, this court is not at liberty to exercise independent judgment. Since the decision was rendered affirming the judgment of the district court, the supreme court of the United States has held, construing an act of congress in all material respects identical with the one here involved, that a state statute of limitations is not a bar to an action brought by a railroad company to recover a portion of its right of way. *Northern P. R. Co. v. Townsend,* 190 U. S., 267, 23 Sup. Ct. Rep., 671, 47 L. Ed., 1044. We quote at length from the opinion: "The substantial consideration inducing the grant was the perpetual use of the land for the legitimate purposes of the railroad, just as though the land had been conveyed in terms to have and to hold the same as long as it was used for the railroad right of way. In effect the grant was of a limited fee, made on an implied condition of reverter in the event that the company cease to use or retain the land for the purpose for which it was granted. This being the nature of the title to the land granted for the special purpose named, it is evident that, to give such efficacy to a statute of limitations of a state as would operate to confer a permanent right of possession to any portion thereof upon an individual for his private use, would be to allow that to be done by indirection which could not be done directly; for, as said in *Grand Trunk R. Co. v. Richardson,* 91 U. S., 454, 'a railroad company

---

* 14 Statutes at Large, p. 210, ch. 212.

is not at liberty to alienate any part of it so as to interfere with the full exercise of the franchises granted.' Nor can it be rightfully contended that the portion of the right of way appropriated was not necessary for the execution of the powers conferred by congress, for, as said in *Northern P. R. Co. v. Smith*, 171 U. S., 260, speaking of the very grant under consideration: 'By granting a right of way 400 feet in width, congress must be understood to have conclusively determined that a strip of that width was necessary for a public work of such importance.' Neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right of way is no longer needed for the use of a railroad, and title to it has vested in whomsoever chooses to occupy the same. The whole of the granted right of way must be presumed to be necessary for the purpose of the railroad, as against a claim by an individual of an exclusive right of possession for private purposes. To repeat, the right of way was given in order that the obligations to the United States, assumed in the acceptance of the act, might be performed. Congress having plainly manifested its intention that the title to, and possession of, the right of way should continue in the original grantee, its successors and assigns, so long as the railroad was maintained, the possession by individuals of portions of the right of way can not be treated, without overthrowing the act of congress, as forming the basis of an adverse possession which may ripen into a title good as against the railroad company."

With this decision before us, and with an imperative obligation resting upon us to accept it as binding authority, it would be manifestly unprofitable to inquire whether a different conclusion might not be reached if the right of way had been acquired otherwise than by grant from the general government. Other cases are pending in this court which will, we are advised, bring before us in a short time the broad question of the applicability of the limitation law to actions brought by railroad companies

McLucas v. St. Joseph & G. I. R. Co.

to recover land acquired for right of way by condemnation or purchase. Until these cases, or some of them, are reached and submitted, we decline to either affirm or repudiate the doctrine announced in the former opinion. The matter will, meanwhile, remain *res integra.*

The judgment of affirmance is adhered to.

### FORMER JUDGMENT ADHERED TO.

NOTE.—*Northern P. R. Co. v. Townsend* is cited in this opinion. This was an action in ejectment begun in the district court of Wadena county, Minnesota, by the railroad company to recover possession of two strips of land situated on either side of its track, where the same crossed three forties of the northwest quarter of section 24, township 134, range 35. It was considered that under the land grant of July 2, 1864 (12 United States Statutes at Large, 365), the filing of a map of definite location in 1871, and by the construction of the railway, the plaintiff's predecessor acquired a right of way 400 feet in width where the road ran over what was then public domain, which included the strip in question. The defendant was the grantee of two persons who entered the forties under the United States Homestead Act, subsequent to 1871. Defendant admitted the right and constructive possession to be in the plaintiff, but claimed that possession and the right thereto had been wholly lost by reason of the fact that defendant and defendant's grantors had been in actual, open, notorious and adverse possession of these strips, cultivating the same continuously for more than fifteen years. The case was tried by Searle, J. Verdict and judgment for plaintiff. The judgment was reversed by the supreme court. Opinion by Collins, J., 84 Minn., 152. On error to the supreme court of the United States, the decision of the supreme court of Minnesota was reversed. Opinion by White, J.; Harlan and Brown, JJ., dissenting, 190 U. S., 267.—W. F. B.