SOUTHERN RY. Co *v.* F. A. VANN *et ux.*

(*Knoxville.* September Term, 1919.)

1. **RAILROADS.** Deed of right of way conveys easement.

A deed by the owner of the fee to a railroad company for right of way for railroad purposes conveys only an easement. (*Post, pp.* 83-88.)

Acts cited and construed: Acts of 1847 & 1848, ch. 120, sec. 23.

Cases cited and approved: Railroad Co. v. Telford, 89 Tenn., 294; Railroad Co. v. French, 100 Tenn., 209; Railroad Co. v. Donovan, 104 Tenn., 465; Railroad v. Crow, 108 Tenn., 17; Railroad Co. v. Telegraph Co., 101 Tenn., 63; N. C. & St. L. Railway Co. v. McReynolds, 48 S W., 258; Railroad Co. v. Raine, 114 Tenn., 569; Southern Railway v. H. W. Pardue, M. S.; N. O. & T. P. Railway v. Sharp, 207 S. W., 728.

2. **ADVERSE POSSESSION.** Of railroad right of way by owner of fee.

The owner of fee, subject to a railroad company's easement of right of way, can subject the land to any use, except railroad purposes, which does not interfere with the railroad company's use of such right of way, so that the owner's occupation for many years is not adverse, and is no bar to the railroad company's right to recover possession of the right of way. (*Post, pp.* 83-88.)

3. **RAILROADS.** Width of right of way granted by deed.

Where a right of way for a "railroad, according to the provisions of the charter," was conveyed by a deed, in which the width of the right of way was left blank, *held* that the deed did not convey merely the width of the main line and side track, but it conveyed a right of way of the width of 200 feet, as determined by the railroad company's charter, though a later deed described a depot site 175 feet wide on one side of the track. (*Post, pp.* 83-88.)

4 **RAILROADS.** Abandonment of right of way not shown by nonuser and adverse holding by fee owner.

Southern Ry. Co. v. Vann.

The fact that a railroad company does not require the full width of its right of way at a particular time for railroad purposes is no evidence of an abandonment which involves an intention to cease maintaining and operating the road over the right of way, and an adverse holding of the land's surface by the fee owner, and the acquiescence of the railway company therein, do not indicate an abandonment. (*Post, pp.* 88-91.)

5. **LIS PENDENS.** Adverse claimant to right in land.

An adverse claimant to a right in land is not affected by the pendency of a suit about the land unless he is a party thereto. (*Post, pp.* 91-93.)

6. **RAILROADS.** Estoppel to claim right of way granted.

An agreement by a railroad company with the owner of the fee as to the description of his land, or an agreement with another in respect thereto, such as a lease with a description not inconsistent with the use of the right of way granted, cannot estop the company, and thereby disqualify it to discharge its obligations to the public, but such agreement, if possible, will be referred to the owner's right to use the fee subject to right of way. (*Post, pp.* 91-93.)

Cases cited and approved: Lumber Co. v. Railroad, 129 Tenn., 176; M. & P. R. Co. v. Jacobson, 179 U. S., 287; N. P. R. Co. v. Townsend, 190 U. S, 268; McLucas v. Railway Co., 67 Neb., 603; Roberts v. Railways Co., 73 Neb., 8; N. P. R. Co. v. State, 84 Wash., 510.

7. **RAILROADS.** Company cannot divest itself of right of way.

A railroad company is without power to divest itself or any part of its right of way so as to cripple it in the discharge of its duties to the public. (*Post, p.* 93.)

FROM GREENE.

Appeal from the Chancery Court of Greene County. —Hon. Hugh M. Tate, Chancellor, sitting by interchange because of the disqualification of Chancellor Haynes.

L. D. SMITH and SUSONG & BIDDLE, for appellant.

SHOUN & TRIM, for appellees.

MR. CHIEF JUSTICE LANSDEN delivered the opinion of the Court.

This suit was brought by the Southern Railway Company to have its rights declared under two certain deeds executed to it for railway purposes by Thomas D. Arnold. The pleadings present the question of whether the railroad company is entitled to 100 feet on each side of the center line of its main line, or whether it is only entitled to enough land for a main line and a switch track. The defendants claim the lands through Arnold, and their answer makes the issue just stated. There is also a question of estoppel, which will be referred to later.

Arnold made two deeds to the complainant's predecessor in title, one dated March 18, 1853, and the other dated March 29, 1858. The material parts of the deed dated March 18, 1853, are as follows:

"This indenture, made and entered into this second day of March, in the year 1853, between Thomas D. Arnold, of the county of Green and state of Tennessee, of the one part, and East Tennessee & Virginia Railroad Company of the other part, witnesseth that the said Arnold, for the consideration of the benefit conferred upon the public, as well as myself, I have by these presents bargained and conveyed, and do hereby bargain and convey, into the said East Tennessee & Virginia Railroad Company, and their successors in office during the continuance of said road, the right

of way through my tract of land, situate and lying in the county aforesaid, and containing about seventy acres, being in the Greeneville district, and a part of it within the corporation of the town and adjoining the Hawkins road on the Northeast, and the Wyley's Mill road on the Southwest and to include the right of way as laid down and located by the company at this time, — feet on each side of the center of said road; and the said company, by themselves, their agents or contractors under them, shall have full power and authority to enter upon the said land, and to build and construct the said road, by the removal of earth, rock, timber, and any and everything which may be necessary to remove to make a perfect and complete railroad according to the provisions of the charter of said company, shall have good right and title to the land hereby conveyed for a right of way, and shall have, hold, and enjoy the same as long as the same may be used for the purposes of a railroad, and no longer, and I will hereby warrant and defend the title to the same against the lawful claims of all persons, and I do further convey to the said company a sufficient quantity of ground anywhere on the line of said road on my said tract of land for the purposes of a depot and for nothing else, and no building shall be erected thereon except it be indispensable to the depot; and if said road shall at any time cease to be used as a railroad, or the said depot should be changed or cease to be used, then the ground hereby conveyed for the right of way, as well as for a depot, with all the houses and other appurtenances and fixtures, shall revert to me and my heirs forever."

This deed was executed before any work, was done in Greene county towards the construction of the railroad. But afterwards a question arose in the minds of some of those interested as to the exact meaning of the references in the foregoing deed to the depot site. To clarify this, and to make his meaning plain, Gen. Arnold executed the following deed dated May 29, 1858:

"Whereas, heretofore, to wit, upon the second day of March, 1853, I was requested by Dock Samuel B. Cunningham, Major John McGaughey, and others, stockholders and directors of the East Tennessee & Virginia Railroad, to make a deed conveying to the company the right of way through my lands within the corporate limits of Greeneville, and also for a depot and depot purposes, assuring me that if I gave them the right of way and land for the depot I would lose nothing in the end; and, being thus assured, I made a deed to the company as requested, giving them full scope and verge for both right of way and also for a depot and depot purposes.

"And whereas, sundry carping and discontented persons in the company and out of it have found much fault and have questioned my sincerity, the arrangements and the deed which Dock Cunningham accepted as all he wished or desired, and I understand that Dock is still well satisfied with the arrangement, but others are not, and say I endeavored to make one too indefinite, and that they desire a more limited and definite boundary; and whereas, I am a man of peace and conciliation, and also a warm friend of the road and the present board, and being very anxious to produce harmony and fraternal feeling to the end that

the business of said road may go on prosperously and successfully, I have agreed to narrow down and modify my former deed, and said company through their president accepting this modification in writing; that is to say, I agree that the company may occupy under the deed I made the following boundaries for a depot and depot purposes:

"Beginning at a stake on the outside rail of the side track one hundred and seventy-six feet from my southwest line or line running between myself and Ephraim Davis, therewith said rail three hundred and two feet to a stake by the side of the rail, then at right angle to the railroad to a stake one hundred and seventy-nine feet, then three hundred and two feet parallel with the said track to a stake, then to the beginning.

"This ground was laid off by Mr. John Ingle, Esq., Daniel Kennedy, and Dock Cunningham was present, and I also was present, and one and all agreed to it as a final settlement of the depot questions, with additional agreement that the house is to be one hundred and forty feet long, and if it is not that long then ten feet off of each end of this lot is to be dropped by the company and to revert to my use and benefit. And I further agree that on the southwest end and west of the track there is to be a wagon road along the track and as near the track as it can safely be. I also agree that the ground occupied by the woodhouse or the temporary depot that is there now, and also the land remain vested in the company as by my deed referred to above. I also agree to open a street on the line occupied by the turntable and the bed of the road, is to

6—142 Tenn.

of the railroad lot west of the depot, fifty feet wide and running clear through my land, the company agreeing that half of that street shall be on the depot grounds as far as they go, the right to all else under said deed is hereby relinquished to said Arnold and his heirs forever. I do further agree that the company, if it shall desire it, shall at all times have the privilege of loading stock from my wagon yard at the northeast of my ground adjoining the road. The company providing the necessary platform and other appliance for loading from said yard.''

The East Tennessee, Virginia & Georgia Railroad Company was the immediate predecessor of complainant. It was chartered by chapter 120, Acts of 1847 and 1848, and in section 23 thereof it was provided that the railroad company should have a right of way of 100 feet on each side of the center of the road, unless a contract with the owner of the land specified a different amount. The language of the charter upon this point is as follows:

''In the absence of any contract with the said company in relation to lands through which the said road may pass, signed by the owner thereof or his agent, or any claimant or person in possession thereof, which may be confirmed by the owner, it shall be presumed that the land, upon which the said road may be constructed, together with the space of one hundred feet on each side of the center of said road, has been granted to the company by the owner thereof, and the said company shall have good right and title thereto, and shall have, hold, and enjoy the same as long as the same

be used only for the purposes of said road, and no longer.''

It is contended by defendants that this charter provision applies only in event the railroad company should acquire the land by condemnation. It is contended by the complainant that the provision applies not only to condemnation cases, but to every case in which the company acquires land, either by condemnation or contract, and the width of the roadway is not defined by the contract conveying the land.

We are of opinion that the rights of complainant under the two deeds set out must be determined from a proper construction of the contracts between its predecessor in title and Gen. Arnold. The legislature did not intend to write a description of the land conveyed into a deed which is silent upon the subject, and, indeed, it is doubtful if the legislature could do so. The provision of the charter above referred to is valuable in that it shows the width of the roadway which the State and the incorporators deemed necessary for the proper construction and operation of the road. It is manifest, and is not disputed in this case, that the deed from Arnold to the company conveys only an easement of way in the land. This is important only with reference to the statute of limitations. *Railroad Co.* v. *Telford,* 89 Tenn., 294, 14 S. W., 776, 10 L. R. A., 855; *Railroad Co.* v. *French,* 100 Tenn., 209, 43 S. W., 771, 66 Am. St. Rep., 752; *Railroad Co.* v. *Donovan,* 104 Tenn., 465, 58 S. W., 309; *Railroad* v. *Crow,* 108 Tenn., 17, 64 S. W., 485; *Railroad Co.* v. *Telegraph Co.,* 101 Tenn., 63, 46 S. W., 571. These authorities also hold that the owners of the fee have the right to the

use of the land so long as such use does not interfere with the necessary operation of the railway. As owner of the fee, subject to the easement, the grantor can subject the land to any use which he sees proper, but so as not to interfere with the use of the land by the railroad company for railroad purposes. Such occupa-tion by the grantor is not adverse to the claim of the company. The claims of the two are consistent, and it is only the occupation which can become inconsistent. The use of the land by the owner of the fee for any purpose, except railway purposes, is not inconsistent with the right of the railway company to exercise its easement in the land for the construction and operation. of its road. The nature of a conveyance to the corpora-tion for railroad purposes prevents the corporation from claiming or occupying the land for other purposes, and restricts its claim to the occupancy of the land to the needs of the company for proper and legitimate use of its road. Therefore the fact that the defendants· have occupied the land for many years is no bar to the right of the complainant to recover, if it is otherwise entitled to relief.

Reverting to the deed from Arnold to the railroad company dated March 18, 1853. The consideration ex-pressed in the deed is the benefit which the grantor and the public will receive from the construction of the road. The description of the land conveyed is "a right of way through my tract of land, . . . and to include the right of way as laid down and located by the company at this time, . . . feet on each side of the center of said road." This deed was executed

before any work was done toward locating the road on Gen. Arnold's land. This requires a construction of the deed without referen^e to any physical fact which may have existed at the ·ime. None is shown in the record. The deed also confers upon the company, their agent or contractors, full power and authority to enter upon the land, and to build and construct a road by the removal of earth, rock, timber, etc., so as to make a ''complete railroad according to the provisions of the charter of said company.''

The descriptive words are vague and indefinite, without reference to a definition of a right of way of the company. The conveyance of a right of way will have reference to the charter definition of such right of way, unless there is something in the conveyance which gives it another meaning. We have seen that the legislature granted the company the right to acquire 100 feet on each side of the center line of the roadbed, and Gen. Arnold conveyed to it a right of way through his lands, and authorized it to enter upon the land, and to build and construct the road, so as to make a perfect and complete railroad according to the provisions of the charter. Of course, the grantor could have conveyed a right of way of such width as the railroad company would have accepted. The case of which we are speaking is a case in which the conveyance does not specify any width for the right of way. In such a case the natural meaning of the conveyance is to convey to the railroad company such width of way as is defined in its charter. *N. C. & St. L. Railway Co.* v. *McReynolds* (Ch.), 48 S. W., 258; *Railroad·Co* v. *Raine,* 114 Tenn., 569, 86 S. W., 857; *Southern Railway* v. *H. W. Pardue,*

MS.; *C. N. O. & T. P. Railway* v. *Sharp*, 207 S. W., 728.

The court of appeals held that the conveyance granted to the company a right of way the width of its railroad track and a switch track. It based its conclusion partly upon the deed and partly upon the facts arising after the execution of the deed. We do not think that the fact that the width of the right of way is left 'blank in the deed evidences an intention to convey only the width of 'the main line and side track. It means that the grantor conveyed a right of way "located by the company at this time." No right of way was located upon the ground at the time, and no other location is shown in the record, except that contained in the charter.

The fact that the company constructed certain buildings and platforms upon the right of way, and that defendants constructed certain fences near the track, cannot reflect upon the meaning of the deed, because it is not doubtful, and at most all that could be said of such subsequent transactions is that they are constructions of the instrument placed upon it by the parties. It appears, however, that the parties soon disagreed about the meaning of the deed as to the width of the right of way, and these subsequent acts are inconsistent with each other. They are not mutual constructions of the deed, and appear to have been constructions which each party placed upon it for himself.

The second deed executed by Arnold to the company was executed for the sole purpose of locating and describing a lot upon which to erect a depot. This deed describes a lot of land to be used for depot purposes, and begins at the track, and runs from the track 175 feet. t is said by defendants that this subsequent act of

Arnold and the company shows that they both understood that the first deed did not extend from the center of the track 100 feet, because a right of way of such width would be sufficient for a depot. The lot conveyed by the second deed extends more than 100 feet from the center line of the track. The record does not show the width of land needed by the company for depot purposes other than what is shown by the deed. It shows clearly that the company desired more than 100 feet. This deed also provides for a wagon road along the track, and as near the track as it can safely be. It is argued by defendants that this shows that the parties understood the former deed to convey a width of way equal to the main line and the side track. But in the next sentence Gen. Arnold recites that the ground occupied by the woodhouse or the temporary depot that is there now, and the land occupied by the turntable, and the "bed of the road is to remain vested in the company as by my deed referred to above." This sentence would indicate that the first depot, the turntable, and the bed of the road were conveyed by the former deed, because they were to remain vested in the company. After providing in the second deed that he was to open a street on the line of the railroad west of the depot 50 feet wide, and running through his land, he then stipulated, "The right of all else under said deed is hereby relinquished to said Arnold and his heirs forever." It might be said that this expression implied that other lands were conveyed in the first deed than those referred to. But such expressions may be misunderstood if literally applied to particular things, because they are often used as an *omnium gatherum* out of the abundance

of caution. We hold that, upon a proper construction of the deed, the width of the right of way conveyed by Gen. Arnold must be determined by the charter provision, and is therefore 200 feet.

The defendants insist that notwithstanding the above construction of the deeds the complainant is estopped to claim more than the right of way at present occupied, because of certain facts set out in the record. The court of civil appeals finds these facts as follows, and holds that the complainant is estopped:

"The lease by the railroad to Doughty and O'Keefe in 1887 of two lots originally belonging to the Arnold estate, the boundaries of which lots are within the two hundred foot limit; the institution by the railroad company in the chancery court at Greenville in 1872 of a suit against the Arnold heirs and Hirsch, by which the railroad company asserted its right to a two hundred foot strip of land, and, upon answer filed by the defendants denying such right, the railroad allowed the suit to remain upon the docket for eight years, and then, under a rule to prosecute, the case was dismissed at complainant's cost; the lease by the railroad, in 1890, to W. A. Godfrey of a piece of ground thirty by twelve feet in dimension, the same being described in the lease contract as adjoining the Godfrey lot, the Godfrey lot being now Mrs. Vann's lot and the lot in controversy; the lease by W. E. Milburn to the railroad company in 1891 of a warehouse standing within ten or fifteen feet of the end of the cross-ties, and within the two hundred foot strip of ground.

"These and other circumstances, which the proof abundantly establishes, would undoubtedly estop the

complainant if it were an individual, and we confess that we can see no reason why the fact that the complainant is a railroad company should render it immune to this well-settled doctrine. The railroad has too often and in too many ways distinctly recognized complainant's title to now be heard to dispute it, and we hold that the defenses of estoppel, abandonment, and surrender are well established by the proof and sustained by the law. . . .

"We hold that the railroad company lost whatever right it may have had in the land in controversy, or any easement it may have had therein, when it abandoned the turntable, platform, and the temporary station which were located thereon. This abandonment occurred many years ago, probably more than forty years ago, and after this great lapse of time, and after having once by legal proceedings attempted and failed to assert its rights to this strip of ground, and after having repeatedly recognized the rights of adversary parties, to allow the railroad company at this late date to claim this ground would be, we think, a violation of the plainest principles of equity and justice.

"The deed upon which complainant relies provides expressly that the property shall revert to the grantor in case of abandonment, and we hold and find that the railroad has long since abandoned the land it now seeks to recover.

"We furthermore are of the opinion that the railroad having more than twenty years ago received actual notice of the hostile character of the claim of defendants and of those under whom they hold, and having acquiesced during this long period of time therein without

actively asserting whatever rights it may have had, is barred by the statute of limitations.''

The court of appeals was of opinion that the case of *Railway Co.* v. *Telford,* 89 Tenn., supra, was authority for the proposition that, when the owner of the fee has possession claiming adversely to the railroad, the possession so held would complete the bar of the statute of limitations, and was also evidence of an abandonment by the company. We think this is a misconception of the Telford Case and other cases. Telford had had possession of the railway's right of way for sufficient time to complete the bar of the statute if the possession had been adverse in its nature. But after the company acquired an easement of way the landowner remained the owner of the fee, and his possession of that part of the land not needed by the company for railway purposes was not inconsistent with the company's claim to its easement. Therefore no length of possession would bar the right of the claim. It was for this reason that the court said in the Telford Case that the possession was not had under a notice to the owner of the easement that the possession was adverse to his rights. Abandonment referred to is not nonuser merely. It must be an abandonment of the right of way for railroad purposes. The fact that the company does not require the full width of the right of way at any particular time for railroad purposes, and therefore does not use it in connection with the construction and operation of its road, is no evidence whatever of an abandonment. Before an abandonment can be established there must be shown the intention upon the part of the company to cease maintaining and operating

its road over the right of way. The adverse holding of the surface of the land by the owner of the fee, and an acquiescence therein by the railway company, are no indications of an abandonment. There is no inconsistency in the claim of the feeholder to the railway company.

In considering the defense of estoppel it is necessary to have in view the nature and objects of the railway company. It is created by the law to serve the public in transportation of freight and passengers. The main object of this creation is the public service. Of course, the stockholders are permitted to make a profit upon the investment; but this is incidental to the granting of the charter, and is not the reason impelling the legislature to create the company. It has been given its extraordinary powers for the benefit of civilization. *Lumber Co.* v. *Railroad,* 129 Tenn., 176, 165 S. W., 224; *M. & P. R. Co.* v. *Jacobson,* 179 U. S., 287, 21 Sup. Ct., 115, 47 L. Ed., 194. In the first case cited it was held that the foregoing was the law of their creation, and that this consideration enters into and controls every facility of transportation which the railroad company acquires to aid it in the performance of its duty to the public.

It is elementary that an adverse claimant to a right in land is not affected by the pendency of a suit about the same land unless he is a party thereto. Therefore the pendency of the case of *Arnold* v. *Arnold* did not affect the rights of the railway company for the reason that it was not a party thereto. It should be remarked that at the time of the pendency of this suit the railroad company had a suit pending against the Arnold heirs, in

which it made the same claim as to the width of the right of way that it is making in this suit. This suit was dismissed without a decree upon its merits, and therefore nothing was adjudicated. Nor do we think that the lease by the railroad to W. A. Godfrey of a piece of ground as set out above effects an estoppel. It is true that the description of this lease called for adjoining the land in controversy, but this description is not inconsistent with the use to which the railroad intended to put the right of way when its uses required its possession. The owner of the fee had the right to occupy the surface of the land until the railroad desired it for railroad purposes.

We think it is questionable if the railroad company could estop itself by an agreement as to the description, use, and occupation of the fee. It has a duty to perform to the public, and its agreements about the fee of the land with the owner thereof will not be ascribed to an intention upon its part to estop itself in the use of its right of way. Its agreement about its right of way, in order to estop it, must be with reference to the right of way itself, and also to one authorized to appropriate and use the right of way. An agreement by the railroad company with the owner of the fee as to the description of his land, or an agreement by it with another in respect thereto, cannot estop the railway company, and thereby disqualify it to discharge its obligations to the public. Such agreements, if possible, will be referred to the landowner's right to use the fee subject to the railroad's right to use its right of way. We do not say whether the railroad com-

pany has the power to divest itself of any of its functions as a common carrier by estoppel.

This holding is abundantly supported by authority, both in our own State and in other jurisdictions. *Railroad* v. *Telegraph Co.,* supra; *Lumber Co.* v. *Railroad Co.,* supra; *N. P. R. Co.* v. *Townsend,* 190 U. S., 268, 23 Sup. Ct., 671, 47 L. Ed., 1044; *McLucas* v. *Railway Co.,* 67 Neb., 603, 93 N. W., 928, 97 N. W., 312, 2 Ann. Cas., 715; *Roberts* v. *Railway Co.,* 73 Neb., 8, 102 N. W., 60, 2 L. R. A. (N. S.), 272, 10 Ann. Cas., 992; *N. P. R. Co.* v. *State,* 84 Wash., 510, 147 Pac., 45, Ann. Cas., 1916E, 1166.

We are therefore of opinion that both the chancellor and the court of civil appeals were in error in holding that the complainant is estopped by any of the acts set out in the opinion of the court of chancery appeals. Those acts are not inconsistent with the company's subsequent claim to the right of way, conceding that the company could estop itself as to its functions as a common carrier. We are further of opinion that the complainant is without power to divest its or any part of its right of way so as to cripple it in the discharge of its duties to the public. It is agreed in the record that the occupation of the lot in question by the railway company is necessary for the proper discharge of its duties as a common carrier. The decrees of the chancellor and the court of civil appeals are reversed, and a decree will be entered here for the complainant, with cost.