UNION PACIFIC RAILROAD COMPANY, APPELLEE, v. CHARLES WOOSTER ET AL., APPELLANTS.

FILED APRIL 17, 1920.    No. 20967.

1. **Adverse Possession:** RAILROAD RIGHT OF WAY. The Norris act will not be given retrospective operation to aid an abutting landowner in acquiring title to part of a railroad right of way by adverse possession.

2. **Railroads:** RIGHT OF WAY: ABANDONMENT. To constitute an abandonment by a railroad company of a part of its right of way, there must be a clear intention to abandon. Evidence examined; *held*, there was no intention to abandon that portion of the right of way in suit.

3. ———: ———: ———. Whenever a railroad company operates trains daily over its right of way, it is a constant assertion of its intention to use and occupy the full width of same for railroad purposes.

4. ———: ———: ———. Mere nonuser by a railroad company of a part of its right of way does not constitute an abandonment of such unused portion.

APPEAL from the district court for Merrick county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*W. H. Thompson* and *Lloyd G. Thompson*, for appellants.

*N. H. Loomis, Edson Rich* and *John C. Martin, contra.*

ALDRICH, J.

The Union Pacific Railroad Company commenced this action in the district court for Merrick county to recover certain parts of its railroad right of way. The land in controversy constitutes portions of the outer margin of the right of way on the north and south sides of the track where the right of way crosses defendants' quarter section of land. The court below rendered judgment in favor of plaintiff and defendants appeal.

Defendants claim title by virtue of adverse possession and abandonment as provided in the Norris act of June 24, 1912, 37 U. S. St. at Large, ch. 181, p. 138.

The land in question is part of a 400-foot right of way granted to a predecessor of plaintiff company by congressional act of 1862, which grant included each alternate numbered section along the line of railroad, being the odd-numbered sections. The Union Pacific Railroad company acquired its title to the right of way by purchase at foreclosure sale in the year 1898, when certain mortgages and a lien held by the United States government were foreclosed.

Defendants contend that section 2 of the Norris act, "That any part of the right of way heretofore mentioned which has been, under the law applicable to that subject, abandoned as a right of way is hereby granted to the owner of the land abutting thereon," effects title in their favor. Then it would indicate this act might affect antecedent rights, and, if it does, then it contravenes the federal Constitution. A statute will not be permitted to invade vested rights, nor to take property without due process of law. This act of June

24, 1912, cannot be heard to affect the question of adverse possession before the year 1912. That question is not in this case. This law was before the United States supreme court in the case of *Union P. R. Co. v. Laramie Stock Yards Co.,* 34 Sup. Ct. Rep. 101 (231 U. S. 190) and there it was expressly said: "A retrospective operation will not be given to the provision of the act of June 24, 1912," etc. This rule is just and meets the issue herein with respect to adverse possession accurately.

Then it is plain that, if the question of adverse possession has already been foreclosed in the *Laramie Stock Yards* case, *supra,* the remaining question is: Have 'the defendants acquired the property through abandonment and nonuser?

It must be conceded that prior to the Norris act the plaintiff company had acquired a certain public easement in its right of way which could not be disturbed so long as the act of 1862 was in operation, and also it is true that a purchaser at a valid foreclosure sale acquires all the title, rights and interest of the mortgagor in and to the mortgaged property as the same existed at the date of the sale. 27 Cyc. 1723. It is true that plaintiff company acquired whatever easement had been granted by the government to its predecessors, and that was the right of way consisting of a strip of land 400 feet wide from the city of Council Bluffs to the Pacific ocean. Then there would be no abandonment of this right of way or any portion of it since the acquisition of title at the foreclosure proceedings in 1898. Since, as we have pointed out, the United States supreme court has interpreted the Norris act as not being in any sense retroactive with respect to affecting antecedent rights, then it follows fundamentally that the plaintiff could not have done anything to be of any benefit to defendants in the acquisition of title. To give this portion of the act the effect claimed by the defendants would give

it a retroactive operation, which cannot be done to divest the railroad company of antecedent rights.

What are the facts with reference to abandonment? Is there any evidence of actual discontinuance of the use of this right of way for railroad purposes? Is there any evidence of actual intention not to use the land in controversy for railroad purposes? Is it not true that plaintiff since 1898 has never deeded away a foot of its right of way to defendant or any one else except to validate certain deeds made by its predecessors? Is it not true that plaintiff since 1898 has returned to the state board of equalization an assessment roll for taxes? It is a fact that taxes have been paid as levied by the proper authority on this land since its acquirement under foreclosure proceedings or the passage of the Norris act.

It is also true as a matter of law that a railroad company's failure to immediately use its right of way to its fullest extent is not a waiver of its right or an abandonment of its right of way. *Conabeer v. New York C. & H. R. R. Co.*, 156 N. Y. 474.

There is no evidence of any intention of abandonment. The plaintiff company for many years has used the land in question and occupied it as a matter of law for transportation purposes and kept it in good repair. It has equipped and maintained at least one or more tracks over this right of way for transportation purposes since the day of acquiring the right of way by foreclosure proceedings.

The issue of abandonment, to make it effective, must always be accompanied by an intention to do something which constitutes an overt act which carries out this express intention. Is there any evidence of an intention anywhere in this record that proves or tends to prove any purpose of abandonment? If there is, we are unable to discover it. It is no argument for the doctrine of abandonment to say that for the moment some portion of the right of way is not used, that this conduct

abandons the right of way. The answer to that theory or contention is that a vast railway system like the plaintiff's, that has its tracks extending over many states through a fertile agricultural empire, naturally would need many tracks within the next decade. Cities in this section and the entire country herein are growing by leaps and bounds, and the United States government, we think, acted wiser than it knew when it provided for a 400-foot right of way. Vast cities are developing in a territory immediately tributary to these wide plains, and of necessity they will depend in the not distant future upon a great railway system such as is being operated here for food supply and other transportation incidental to large centers of population. This theory is supported in *Townsend v. Michigan C. R. Co.*, 101 Fed. 757.

In this connection of abandonment of an easement it may be well to recognize the rule that a nonuser of an easement, temporarily, for a purpose not strictly authorized, does not constitute an abandonment. *Gurney v. Minneapolis Union Elevator Co.*, 63 Minn. 70.

It is true that a railroad company may seldom, if ever, have occasion to use all of its right of way. This may be why courts have been lenient and it has been their policy to consider a railroad right of way in full operation wherever it has a track over any portion of its right of way. This rule was laid down in *Paxton v. Yazoo & M. V. R. Co.*, 76 Miss. 536. Then it must follow that a railroad company does not in any sense lose its title to its right of way by mere nonuser, and the running of trains is a constant assertion which accompanies the right of way to its full extent as granted. Many more cases could be marshaled to show the situation as we have it, that the Norris act has no application.

It does not appear in the record anywhere that there is anything that points to a nonuser by the company where it shows a clear intention of abandonment. It is a rule of law that mere nonuser for even a period of

21 years by a railroad company of its entire width of right of way does not cause such unused part to revert to the public. *Pennsylvania R. Co. v. Borough of Freeport,* 138 Pa. St. 91.

Defendants in support of their claim for abandonment cite *State v. Chicago, St. P., M. & O. R. Co.,* 140 Minn. 440. This case is hardly in point, or rather does not convey much influence, because it has reference to a railroad company that had acquired by purchase some land which it never made use of for railroad purposes, but leased it for lumber and coal-yards, and never occupied it for railroad purposes at all, failed to pay taxes, or exercise other dominion over it.

It may be the weight of authority that it was the policy of the courts and of the public in general to lull plaintiff into the belief of the security of its possession. Whether or not this was the intention we cannot say, but it was the result of what they did. *McLucas v. St. Joseph & G. I. R. Co.,* 67 Neb. 603; *State v. Grimes,* 96 Neb. 719. Notably so is this statement true with respect to Nebraska courts.

The utmost defendants could claim is permissive user. There is nothing in the evidence that shows by a preponderance thereof an abandonment or nonuser that establishes any intention of abandonment.

The finding of the court below is

AFFIRMED.

MORRISSEY, C. J., and LETTON and ROSE, JJ., not sitting.